## James C. McCullough v. Will H. Moore, et al.

### Gen. No. 11,045.

1. BOND—*construction of, where conditioned to perform covenants of
lease.* Where a bond is conditioned for compliance with certain cove-
nants of a specified lease, such covenants are as much a part of the con-
dition of the bond as if set forth therein.

2. BOND—*when condition of, is not too vague.* The condition of a
bond providing for the erection of a block of buildings, though general
in terms and leaving much to the discretion of the obligors, will not
preclude a recovery where no buildings have been erected.

3. BOND—*when penalty of, considered as liquidated damages, is not
excessive.* Where a bond conditioned for the erection of five first-class
buildings, three stories high and constructed of brick and stone, is
broken, a penalty of $5,000 stipulated as liquidated damages, is not
excessive.

4. LIQUIDATED DAMAGES—*when penalty of bond will be enforced as.*

When from the nature of the condition contained in the bond the damages for the breach of such condition cannot be calculated with any degree of certainty, the penalty of such bond will usually be held to be liquidated or stipulated damages.

5. CONTRACT—*when a, is quasi-alternative.* A bond by which the obligors agree to erect a block of buildings, or in default thereof, to pay a specified sum of money, while not technically an alternative contract, partakes of that nature.

Debt upon bond. Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed January 14, 1904.

E. W. ADKINSON, for plaintiff in error.

FOLLANSBEE & FOLLANSBEE, for defendants in error.

**Statement by the Court.** This was a suit on the following bond:

" Know all men by these presents, that we, Charles C. Landt and Will H. Moore, are held and firmly bound unto James C. McCullough in the penal sum of $5,000 lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, our heirs and legal representatives, jointly and severally by these presents.

" In witness whereof we have hereunto set our hands and seals this October 12th, 1902.

" The condition of the above obligation is such that, if the said Landt and Moore, or their assigns, shall duly comply with the conditions of a certain lease dated March 20, 1889, from said McCullough to one James M. Stebbins, and assigned by said Stebbins to said Landt and Moore, as to the erection of buildings on a portion of the ground described in said lease, then this obligation to be null and void, otherwise in full force and effect.

CHARLES C. LANDT,     [SEAL.]<br>WILL H. MOORE.        [SEAL.] "

The declaration consists of four counts, to all of which the defendants demurred, assigning, as special cause of demurrer, that the specifications for the buildings to be constructed on the premises described in the lease referred to in the different counts of the declaration, are so uncertain, indefinite and vague as to render the bond sued on wholly void. The court sustained the demurrer to the whole dec-

laration and rendered judgment against the plaintiff for costs.

The declaration consists of four counts, one original and three additional counts.   It is not contended that, assuming there can be a recovery at all, the plaintiff cannot recover under the pleadings, so that it is unnecessary to refer specifically to each count of the declaration.   The third count, being the second additional count, sets out the lease *in haec verba*, the provisions of which, in so far as we deem it necessary to refer to them in considering the case, are, in substance, as follows:   The lease is from McCullough, plaintiff in error, to James M. Stebbins, is of date March 20, 1889, and demises lots 1 to 8, inclusive, in McCullough's subdivision of lot 1 of County Clerk's division of the southeast quarter of the northeast quarter of section 9, township 38, range 14 east of the third principal meridian, except south 1,100 feet of said southeast quarter lying east of the Chicago, Rock Island & Pacific Railroad; said premises being 218 feet front on State street, and 102 feet in depth to a fourteen foot alley, situate in the Town of Lake, Cook County, Illinois;. for the full term of fifty years, commencing May 1, 1889, and ending April 30, 1939, the lessee to pay as rent for said premises $1,050 per annum in quarterly installments of $262.50 each, on the first days of August, November, February and May in each year, for the first sixteen years of the term.   As to the remainder of the term, the lease contains this provision:   ·

"And it is further agreed that, at the expiration of sixteen years of the leasehold term, the said ground shall be revalued, including the whole number of feet frontage on State street, and the lease shall then continue, at such valuation, for seventeen years at five per cent, and then to be again revalued as to the ground, and then continue at such revaluation for the remainder of said term of fifty years, lease to remain the same in all other respects."

The lease contains the following provision:   "The said party of the second part, as security for the rents and covenants herein contained, further agrees to erect and complete upon said premises, by or before the first day of May, A.

D. 1893, a block of good and substantial, three-story at least, first-class brick or stone buildings, not less than five in number; and in case of loss or damage by fire, or otherwise, to said buildings so to be erected, or to any that may be upon said premises, to rebuild or repair the same within twelve months thereafter, equal in value or condition to the building or buildings so destroyed or damaged; and at all times during said leasehold term, to keep all buildings on said premises, at his own expense, in good repair and condition, so that the security furnished thereby for the rents and covenants herein stipulated to be paid and performed, shall not at any time be impaired."

The count, after setting out the lease, avers the acknowledgment of it April 9, 1889, and the recording of it October 17, 1892; that Stebbins, the lessee, took possession of the demised premises and occupied the same until October 12, 1892, when he assigned the lease to the defendants Moore and Landt, which assignment was acknowledged by Stebbins October 12, 1892; that, at last mentioned date, the defendants negotiated with the plaintiff for his consent to said assignment by Stebbins, and requested his consent thereto, and that he gave his consent, in writing, to said assignment, which he acknowledged and which was recorded. The written agreement of consent to the assignment is set out in full, and contains the following:

"That the time in said lease stipulated, within which the agreed improvements are to be erected, is hereby extended from May 1, 1893, to May 1, 1895."

It is further averred as follows : that, October 12, 1892, defendants, in order to obtain plaintiff's consent to the assignment by Stebbins of the lease to them, executed to the plaintiff the bond in suit, setting it out in full. It may be here noted that the lease contains this provision:

"This lease is not to be assigned during the first twenty-five years, without the consent of the lessor, but such consent shall not be withheld unless for valid and legitimate reasons and objections on the part of said lessor."

It is further averred that, September 12, 1894, plaintiff,

McCullough v. Moore.

by the request of the defendants, entered into an agreement with them (which is in writing and set out *in haec verba*) extending the time for the erection of the buildings to May 1, 1896, and that, November 1, 1895, plaintiff, by request of the defendants, made a like agreement with them (which is also fully set out), extending the time for such erection until May 1, 1897; that the defendants did not, prior to May 1, 1897, assign the lease, and that they have utterly failed and refused to erect said block of buildings or any part thereof, etc.

The lease contains provisions for the keeping in repair the buildings to be erected on the said premises and the insuring them, so that the security for the rent, etc., should not be impaired, and also for the payment by the lessee of all taxes and assessments, and for forfeiture of the lease in the event of the breach by the lessee of any of the covenants of the lease by him to be performed, the forfeiture to be not only of the lease, but of the interest of the lessee or his assigns in the buildings. The lease also contains the following provision:

"And it is further agreed that at the termination of this leasehold, to-wit, fifty years, the lessor shall have the right to purchase the buildings and improvements then upon said ground of the lessee, and in case the lessor and lessee cannot agree as to purchase and sale, then said ground is to be revalued in the same manner as herein provided; and this lease to extend ten years longer at five per cent per annum, upon such revaluation; and, at the expiration of said ten years, the lessee has six months additional time in which to sell or remove such buildings and improvements, and during the time of said six months, taken by him in occupation of said ground, he is only to pay one-half the rent for said ground as fixed for last said ten years."

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The condition of the bond sued on being to comply with the conditions of the lease from McCullough to Stebbins, as to the erection of buildings on a portion of the demised premises, the conditions of the lease, as to the erection of build-

ings, are as much a part of the condition of the bond as if
set forth at large therein.    Therefore, the condition of the
bond must be read as follows :   The condition of the above
obligation is such that if the said Landt and Moore, or their
assigns, shall erect and complete upon said premises, by or
before the first day of May, 1893, a block of good and substan-
tial, three story at least, first-class brick or stone buildings,
not less than five in number, then this obligation to be
void, otherwise in full force and effect.    It has been shown in
the statement preceding this opinion that the condition was
modified, as averred in the declaration, by extending the
time for the erection of the block of buildings till May 1,
1897.    The main contention of counsel for defendants is
that the description of the block of buildings to be erected
is so vague, indefinite and uncertain, and the damages, if
any, resulting from the alleged breach of the condition of
the bond, so manifestly speculative and unascertainable,
that there can be no recovery.    This is not a suit to com-
pel specific performance. by the defendants, nor is it neces-
sarily to be regarded as a suit for unliquidated damages,
but may be regarded as a suit for the $5,000, the sum
named in the bond, on the theory that that sum was fixed
by the parties as liquidated damages.    It is not contended
by counsel for the defendants that it would have been im-
possible for defendants to have erected on the demised
premises a block of good and substantial, first-class brick
or stone, buildings, three stories high.    This could certainly
have been done, and the fact that with the exception that
the buildings were to be three stories high, of brick or stone,
good and substantial, and first-class, all other things were
left to the discretion and judgment of the defendants, cer-
tainly was not to their disadvantage, but rather the con-
trary.    It was contemplated that they or their assigns would
occupy the premises for at least fifty years from the date
of the lease, and it was left to them to decide as to all
things in respect to the character of the buildings, as to
materials, number of rooms, width and depth, etc., except
that they should be first-class, of stone or brick, good and

substantial, and, at least, three stories high. If, as contended by defendants' counsel, damages cannot be estimated because it cannot be known just what kind of houses the defendants might have constructed, and what the plaintiff may have been damaged by being deprived of the security which would have accrued to him from their erection, this does not militate against the theory of the plaintiff that the sum named in the bond is to be regarded as liquidated damages.

In Hennessy v. Metzger, 152 Ill. 505, 517, the court say :

" When, from the nature of the contract, the damages cannot be calculated with any degree of certainty, the stipulated sum will usually be held to be liquidated damages, where they are so denominated in the instrument," citing numerous cases.

In the case cited a certain sum for every day's delay after a certain day in constructing a mill, was fixed by the contract " as liquidated damages," so that the language of the court, viz.: " When they are so denominated in the instrument," was strictly applicable to that fact; but it is not the law that the presence or absence of the words "penalty," or " penal sum," or " liquidated damages," will control, in determining whether a sum named is to be considered as liquidated damages, or merely as a penalty.

1 Sedgwick on Measure of Damages, 8th ed., secs. 406, 408. This author writes:

" The question whether a stipulated sum is to be allowed as liquidated damages is a question of law, and no agreement of the parties to call it a penalty or liquidated damages can decide the question." Ib., sec. 408.

See, also, to same effect : Jaquith v. Hudson, 5 Mich., star p. 124, 138; Scofield v. Tompkins, 95 Ill. 190; 19 Am. & Eng. Ency., p. 400, and cases cited in note 1.

' In Jaquith v. Hudson, *supra*, which is a well-considered case, Christiancy, J., delivering the opinion, says :

" In ascertaining this intention, no merely technical effect will be given to the particular words relating to the sum, but the entire contract, the subject-matter, and often the situation of the parties with respect to each other and to the

subject-matter will be considered.   Thus, though the word
'penalty' be used, (Sainter v. Ferguson, 7 M. G. & S., 716;
Jones v. Green, 3 Y. & Jer., 299; Pierce v. Fuller, 8 Mass.
223,) or 'forfeit,' (Noble v. Noble et al., 7 Cow. 307,)
or 'forfeit and pay,' (Fletcher v. Dycke, 2 T. Tr., 32,) it will
still be held to be stipulated damages, if, from the whole
contract, the subject-matter and situation of the parties, it
can be gathered that such was their intention.   And in
proportion as the difficulty of ascertaining the actual dam-
age by proof is greater or less, where this difficulty grows
out of the nature of such damages, in the like proportion
is the presumption more or less strong that the parties
intended to fix the amount."   5 Mich., star p. 138.

"Where, independently of the stipulation, the damages
would be wholly uncertain, and incapable or very difficult
of being ascertained, except by mere conjecture, there the
damages will be usually considered liquidated."   1 Sedg-
wick on Measure of Damages, 8th ed., sec. 416, citing very
numerous cases.

The author, commenting on the rule thus announced,
says :

"The uncertainty contemplated by the rule is an uncer-
tainty as to the extent and amount and not as to the proper
measure of damages.   *   *   '*   It must also be clear that
there will not be a glaring disproportion between the sum
stipulated and the probable legal measure."   Ib.   Cases
illustrative of the text, among which are Chase v. Allen,
13 Gray, 42, and Jaqua v. Headington, 114 Ind. 309, are
cited.

The former case was a suit on a bond, conditioned for
the construction and completion of a hotel by a certain
day.   Numerous persons had subscribed different sums
to aid in the construction of the hotel, induced so to do, as
appears from the opinion, by the benefit which would
probably accrue to them by the enhancement of the value
of their real property.   The question was, whether the sum
mentioned in the bond was to be considered as a penalty or
liquidated damages.   The court held the latter, saying :

"Where a party agrees to pay a certain sum in case he
fails to perform any one of divers acts which are of differ-
ent degrees of importance, and which are capable of being
estimated and measured in money, the sum named as dam-

McCullough v. Moore.

ages is to be treated as a penalty; but if the contract consists of several stipulations, the damages for a breach of which cannot be well ascertained and valued, then, the parties are deemed to have intended that the sum agreed on shall be treated as liquidated damages, from which there is to be no deduction. Green v. Price, 13 M. & W. 701, 702, and 16 M. & W. 346; Atkins v. Kinnier, 4 Exch. 783; Curtis v. Brewer, 17 Pick. 513; Heard v. Bowers, 23 Pick. 455. The case at bar clearly falls within the latter branch of the rule. The subject-matter of the contract is such as to render it quite impossible to form any estimate of the damages occasioned by a breach of its stipulations. No standard by which the damages can be measured is furnished by the contract itself, nor would extrinsic evidence afford any means by which they could be accurately or even approximately ascertained."

Jaqua v. Headington, 114 Ind. 309, was a suit on a bond in the penal sum of $250, conditioned that the obligor would extend through certain land, which the obligees had purchased from him, three streets of the town of Portland. The court held that, there being no exact standard by which a recovery could be measured, the sum mentioned in the bond should be held to be liquidated damages. See, also, 19 Am. & Eng. Ency., p. 402, parag. 8, and cases cited in note 3.

In Gobble v. Linder, 76 Ill. 157, the court say:

" It will be inferred the parties intended the sum named as liquidated damages where the damages arising from the breach are uncertain, and are not capable of being ascertained by any satisfactory and known rule, or where, from the nature of the case and the tenor of the agreement, it is apparent the damages have already been the subject of actual and fair calculation and adjustment. Of the latter sort, says Mr. Greenleaf, are agreements 'to convey land, or, instead thereof, to pay a certain sum.' 2 Greenleaf on Ev., secs. 258, 259. On a review of the cases, Mr. Sedgwick, in his work on Damages, says certain principles seem deducible from them; among others, that where the agreement is in the alternative, to do some particular thing or pay a given sum of money, the court will hold the party failing, to have had his election, and compel him to pay the money. Sedgwick on Meas. Dam., side p. 421. Without entering upon an examination of the adjudged cases, it is sufficient to say, they fully support the text cited."

The contract between the parties in the case last cited is thus stated by the court:

" The written contract between the parties to the suit obligated them to exchange farms. It contained a provision, in case either one failed to make the deed in exchange, at the proper time, such party would ' forfeit and pay, as damages' to the other, the sum of $1,500."

The court held the sum mentioned to be liquidated damages, saying, among other things:

" In case of a breach of the agreement, it would be difficult to estimate and prove, with any degree of certainty, the amount of damages sustained, and for that reason we may well presume, in the language of the books, the damages have been the subject of calculation and adjustment, and the sum named was the amount definitely agreed on."

We think this opinion applicable to the facts in the present case. Here the defendants obligated themselves to pay $5,000, the obligation to be void in case they would construct a block of five buildings, generally described, by a certain time; otherwise the obligation to remain in full force and effect. They failed to erect the buildings. That the construction of the buildings would have been a valuable security to plaintiff for the performance by the defendants of the covenants of the lease by them to be performed, including the covenant to pay the reserved rent, is unquestionable. To be deprived of this security was certainly a loss or damage to the plaintiff. This loss or damage it is difficult and, as we think, impossible to estimate and prove with any degree of certainty. Although the contract in question is, perhaps, not strictly an alternative contract, as defined in the books, yet to distinguish between it and a strictly alternative contract, on principle, is not free from difficulty. By the strict terms of the bond in suit, the defendants agreed to erect the block of buildings, or, in default thereof, to pay $5,000. It is an agreement to do one of two things, as in the cases of Gobble v. Linder, *supra;* Pearson v. Williams, 24 Wend. 244, 26 Ib. 630, and numerous other cases which might be cited.

Counsel for plaintiff contend that the uncertainty in the

description of the block of buildings, which the defendants obligated themselves to erect, is conclusive against the right of recovery, and devote the greater part of their argument to this contention.

In Hurlstone on Bonds, p. 7, the following occurs:

" There is a distinction to be observed between the effect of a condition that is impossible, uncertain, insensible or repugnant, and one that is unlawful. In the former case the condition alone is void, and the bond becomes single, but in the latter instance, not only the condition but the obligation is also void."

In City of Chicago v. The People, 56 Ill. 327, a contractor was bound by the city charter to agree, and, by his contract with the city to perform certain public work, did agree, to be paid from special assessments for the work, and that he would have no claim or lien against the city, except from the collections of such assessments. The law applicable to the facts of the case was such that the city could not make an assessment. The court, McAllister, J., delivering the opinion, held that the condition to take payment only from special assessments was void, and that the promise of the city to pay the contractor was single and absolute.

In Giles v. Halsted, 24 N. J. L. 366, the condition of the bond was meaningless. The court say of the condition of a bond :

" Its office is not to destroy the nature of the obligation under which it is written, unless it discloses that the performance depends on the doing of an act which is either impossible, unlawful, or contrary to sound morals; but it is simply to suspend its efficacy upon the happening of some event or the performance of some act."

Placing ourselves as nearly as may be in the position of the lessor and lessee of the premises, the generality of the description of the buildings to be erected on the premises seems natural and consistent, in view of the relation of the parties to each other and to the subject-matter.

Plaintiff, the lessor, was mainly interested in having houses erected which would be, in his opinion, sufficient

security for the performance by the lessee, or his assigns, as the case might be, of the covenants of the lease; but the lessee, who was to occupy, or whose assigns were to occupy the demised premises for fifty years, was especially interested in having the internal construction and arrangement of the buildings adapted to such purposes as he might contemplate, or to such uses as he might think most beneficial. Hence the construction, beyond the description in the lease, was left to the lessee, and, as before stated, this fact did not render it impracticable for defendants to construct the buildings. We think it safe to say, that it is a matter of common knowledge in this county, in which the demised premises are situated, that a block of five first-class buildings, three stories high, and constructed of brick or stone, would have cost, at any time since the date of the bond in suit, more than $5,000; and that sum cannot, we think, be considered an extravagant or excessive compensation for plaintiff's loss.

We are of opinion that the court erred in sustaining the defendants' demurrer to the entire declaration. Therefore, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*