Edward A. Berger, Appellant, v. R. A. Nants and W. E. Nants, Appellees.

Gen. No. 17,011.

1. DAMAGES—*penalty or liquidated damage.* In determining whether a sum agreed to be paid as damages for the violation of a contract shall be considered as liquidated damages or as a penalty, the primary question is to determine the meaning and the intent of the parties from the contract itself, the subject-matter thereof, the terms used to express the intent, and the circumstances under which the contract was made.

2. DAMAGES—*contract for liquidated damages.* A declaration averred that defendant agreed to sell and deliver a certain quantity of first-grade eggs to be delivered weekly for two months and also all the second-grade eggs he would have for shipment during such months and that he had had on hand during such months a certain quantity of second-grade eggs. The contract was set out in full and required each party to deposit $500 with a bank to be paid over to either party on a default by the other. The pleas averred that the deposit was intended as liquidated damages, that it was agreed that damages were impossible of precise ascertainment by reasons of fluctuations in price and delivery, and that the uncertainty was a reason for making the deposits. *Held*, on demurrer to the pleas, that the amount deposited was not unconscion-

able and the contract should be construed as providing for liquidated damages.

Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

J. HOMER SULLIVAN, for appellant.

ARCHIBALD CATTELL, for appellees; DAYTON OGDEN, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellant brought suit in the Municipal Court against appellees, who are residents of Paris, Tennessee, claiming $7,500 for breach of contract, and served as garnishee the Peter Fox Sons Company, a copartnership, in Chicago. The trial court overruled a demurrer filed by the plaintiff to certain amended pleas to the amended declaration, and the plaintiff electing to stand by his demurrer, a judgment was entered in favor of the defendants, from which the plaintiff appeals.

Though several errors are assigned upon the record, only one is discussed in the briefs of counsel, as to the alleged error of the trial court in overruling the demurrer as to two amended special pleas involving the question whether a provision of the contract in question should be construed as a penalty or, as liquidated damages. The amended declaration consists of nine counts, which allege, in substance, that on February 23, 1909, in Paris, Tennessee, the Peter Fox Sons Company entered into a written contract with appellees, in and by which appellees agreed to sell and deliver, and the Peter Fox Sons Company agreed to purchase from appellees, ten cars of eggs, to grade as "Storage Packed Firsts" at the price of $5 a case, to be delivered during the months of March and April, 1909,

in car lots, the first shipment to be made not later than March, 1909, and the last not later than April 30, 1909, and also agreed to pack and ship to the Peter Fox Sons Company all the second grade eggs they would have for shipment during the same months, at the price of $4.12½ a case, and it is alleged that appellees had on hand, during said months, "to-wit: 1,500 cases" of such eggs; that said contract further provided that appellees should prepay the freight on all such shipments, and give notice to the Peter Fox Sons Company whenever a car was ready to be shipped; that although the time for the delivery of said eggs has elapsed, and the Peter Fox Sons Company has always been ready and willing to accept, receive and pay for the same, yet appellees did not deliver or ship the eggs, nor give any notice to the Peter Fox Sons Company, as required by the contract, but refused to do so, whereby the Peter Fox Sons Company was deprived of great gains and profits, which would otherwise have accrued to them; and that on July 21, 1909, the Peter Fox Sons Company, in writing, assigned all their rights under said contract to appellant.

Appellees filed, among other pleas, two special pleas to all the counts of the declaration. These pleas first *crave* oyer of the contract, and set it out in full. Said contract consists of five paragraphs or clauses. By the first clause appellees agreed to pack and ship to the order of the Peter Fox Sons Company, ten cars or 4,000 cases of eggs, to grade as "Storage Packed Firsts," and in addition thereto, "all the second grade eggs that they may have for shipment" during the months of March and April, 1909; the shipments of the first grade to begin not later than March 15, 1909, and continue one or two cars every week until the total of 4,000 cases is delivered; the last shipment to be made not later than April 30, 1909; all eggs to be packed in new gumwood cases, to be forwarded in refrigerator cars, kept fully iced, and appellees to pre-

pay the freight. By the second clause or paragraph, the Peter Fox Sons Company agreed to accept and pay for the eggs at the rate of $5 per case for the first grade, and $4.12½ per case for the second grade, and that upon notice of the fact that a car is ready to be forwarded from Paris, Tennessee, they should have one of the banks in Chicago, with which they do business, wire the First National Bank of Paris, Tennessee, that the Chicago bank will pay to the order of the Paris bank "Nants Bros. draft with prepaid bill of lading attached, on the Peter Fox Sons Company, for the value of the shipment, figured according to the price herein named for the different grades." By the third clause it was provided that shipments could be made from several towns in Tennessee, naming them. The fourth clause provided, that if on reaching Chicago, any car of eggs fails to grade, appellees, on receiving notice of that fact, will repack them and make them grade, or make an allowance for the difference in value. The fifth clause is as follows:

"That each of the parties to this contract agrees to immediately after the signing of this contract, to deposit five hundred dollars ($500) each in the First National Bank of Paris, Tenn., to be held by said bank in trust for the contracting parties, until sufficient proof can be presented to them that one of the parties has failed to live up to their part of articles one (1) and two (2) of this contract, and at such time the said bank shall pay to the party remaining in good faith the entire one thousand dollars. But if both parties shall faithfully live up to all the terms of this agreement, that then the First National Bank shall return to each one of the parties hereto the five hundred dollars ($500) deposited by each party. This payment then to be made on May 5, 1909."

The pleas then aver that coincident with the signing and delivery of the contract, and as a part of the same transaction, and in compliance with said fifth clause, the parties did deposit with the First National Bank

of Paris, Tennessee, the sum of $500 each, which sums have ever since been retained by said bank in trust for the purposes mentioned in said clause. Then follows an averment that the parties to said contract thereby "fixed, determined and liquidated the damages recoverable by either party for the breach by the other of the provisions of the first and second clauses," at the amount so deposited, and that it was the intention of the parties to thus agree upon the sum of $500 as liquidated damages, to the exclusion of all other methods of liquidating any damages that might accrue to either party through the breach of said contract. One of the pleas further avers that at the time of the making of said contract, it was agreed that actual damages which might accrue, from the breach thereof, were impossible of precise ascertainment, for the reasons, known to the parties at the time, that the price of eggs was subject to extreme fluctuation, and that it was impossible to ascertain in advance the price or value of the classes of eggs described in the contract, which might be obtained at the time when a breach of the contract might occur. The pleas then aver that the Peter Fox Sons Company and their assignee are limited or confined to the amounts so deposited as liquidated damages, which amounts are recoverable, if at all, from the Paris bank and not from the defendants, and conclude with a verification. To these pleas a general demurrer was filed and overruled.

It is frequently difficult to ascertain from the language of a contract and the surrounding circumstances, whether the parties intended that a sum which is agreed to be paid as damages for the violation of the agreement shall be considered as liquidated damages or only as a penalty. The primary question is to determine the meaning and intent of the parties from the contract itself, the subject-matter thereof, the terms used to express the intent, and the circumstances under which the contract was made. In Burk v. Dunn,

55 Ill. App. 25, the court said, (p. 29): "When the damages are considerable, are not capable of exact ascertainment and rest mainly in estimation, and are based upon matters which are more or less uncertain, and where there is no fraud in procuring the contract, the amount fixed by the parties ought to be the guide for the court;" citing as authority for the rule so declared, Gobble v. Linder, 76 Ill. 157; Scofield v. Tompkins, 95 Ill. 190; Boyce v. Watson, 52 Ill. App. 361, and Poppers v. Meagher, 148 Ill. 192. The case of Gobble v. Linder, *supra*, was a case arising out of an agreement for the exchange of property, in which it was provided that if either party failed to make a deed at the appointed time, he should forfeit and pay as damages $1,500. On the principle that the contract was in the alternative, it was there held that the stipulation was not a penalty, but was a provision for liquidated damages, which limited the recovery to the amount stated.

In Scofield v. Tompkins, *supra*, a contract for the sale of real estate provided that if $22,000 was not paid by a certain day, it could be recovered as liquidated damages, and it was held that such a provision was unconscionable and was not enforceable as liquidated damages, but should be construed as a penalty only. It was stated as a further reason, that the provision was intended to secure performance of the contract.

In Poppers v. Meagher, *supra*, a lease provided that for holding over after the expiration of the term, $30 a day should be paid as liquidated damages. The court reviews a number of prior decisions upon this subject, and then states (p. 205): "The rule deducible from these cases may be stated: First, where, by the terms of a contract, a greater sum of money is to be paid upon default in the payment of a lesser sum at a given time, the provision for the payment of the greater sum will be held a penalty; second, where, by

the terms of a contract, the damages are not difficult of ascertainment according to the terms of the contract, and the stipulated damages are unconscionable, the stipulated damages will be regarded as a penalty; third, within these two rules parties may agree upon any sum as compensation for a breach of contract.'' Then, after reciting the facts, the court holds that under the evidence, the amount there fixed ''is not unconscionable, and is reasonable.''

In McCullough v. Moore, 111 Ill. App. 545, the penalty of a bond for $5,000 conditioned upon a full compliance with the provisions of a fifty year lease, requiring the erection of buildings after sixteen years, was held to be liquidated damages, upon the grounds that the amount stipulated was reasonable under the facts there disclosed, and that the damages could not be ascertained with certainty. The court also quoted from 1 Sedgwick on Measure of Damages, 8th Ed., Sec. 416, to the effect that the uncertainty contemplated by the rule is an uncertainty as to the extent and amount of the damages and not as to the proper measure of damages. In Pinkney v. Weaver, 216 Ill. 185, a provision in a contract for the sale and conveyance of real estate to the effect that if the deed therein provided for should not be accepted, the sum of $300, paid as earnest money, should be forfeited as liquidated damages, was held to be reasonable and enforceable as an agreement for liquidated damages.

In this case the general demurrer admits such facts to be true as are well pleaded. It does not appear from such facts that the stipulated amount is unreasonable or unconscionable. It does appear that the contract called for an uncertain and indefinite quantity of eggs to be delivered, namely, such second grade eggs as appellees might have on hand for shipment during the months of March and April, 1909. The averment under a *videlicet* that appellees had on hand during those months 1,500 cases of eggs, does not, in

our opinion, remove the uncertainty in this respect. It also appears that the extent and amount of damages for failure to deliver the ten cars of first grade eggs would be very difficult to arrive at with any degree of certainty, for the reason that the contract permits the delivery at the rate of one or two cars a week, extending over a period of two months; and assuming that a proper measure of damages would be the difference between the market price and the contract price on a particular day when any car or cars would be delivered, the amount of such damages, under such circumstances, is purely conjectural. Moreover, in one of the pleas it is expressly averred that this uncertainty was one of the reasons for the agreement as to the deposit being made, and whether this averment is a mere conclusion or a statement of fact, it is certainly a fair and reasonable construction of the contract itself. In our opinion the fifth clause of the contract in question was an agreement for liquidated damages, and the trial court therefore properly overruled the demurrer.

The judgment of the Municipal Court will be affirmed.

*Affirmed.*