Hal Burnett, Appellee, v. Eugene Nolen, Appellant.

Term No. 4806.

378

Opinion filed January 26, 1949. Released for publication March 1, 1949.

C. A. WHITESIDE and D. E. CAVENDER, JR., both of Harrisburg, for appellant.

ALPHEUS GUSTIN, of Harrisburg, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The defendant appeals from a judgment for $500 entered against him in favor of plaintiff, a Buick dealer, in a suit upon the following contract:

"This agreement entered into between Eugene Nolen and Hal Burnett, this 29th day of August, 1947, for One Dollar and other valuable consideration, said Nolen agrees to take delivery of 1947 Buick 40 Sedannett and further agrees to pay said Hal Burnett the sum of $500.00 in case he sells said automobile within 90 days from date, Hal Burnett agrees to buy this automobile back from Nolen for the amount paid by Nolen within 80 days from this date."

The undisputed facts are as follows: The foregoing contract was executed by the parties as part of a deal for the sale of the designated automobile, which had been driven to some extent by the plaintiff, but which was treated by the parties as a new car, and sold with

a new car guaranty, at the current delivered price. (At the time, the delivered price of a new Buick 40 Sedanette in Illinois was about $2,000.) The plaintiff could have sold this car elsewhere for $2,500. The defendant resold the car within two weeks.

Defendant contends (1) That there was no consideration for this contract, and (2) That it provides for a penalty, which is unenforceable except to the extent of actual damages proved, and none were proved.

■ ■ The answer to the first contention is too obvious to require reference to authorities. In selling any item of property, the owner may require the payment of cash, an exchange of property, an agreement to do something else, or any combination of these considerations. So long as the agreement does not contravene public policy or violate some positive rule of law, the seller is unrestricted in respect to his requirements. In this case, the seller required the quoted agreement in addition to a specified sum of money as consideration for the sale. Therefore, the delivery of the car was consideration for both.

■ ■ Disposition of the second contention is more involved. For many years it has been the policy of the courts to constitute themselves the guardians and protectors of the individual who, though competent to contract, has entered into an improvident agreement to pay an exorbitant sum of money in event of his default in some respect which does not, in fact, cause anything like equivalent damage to the other party. Such a provision is called a "penalty," and the courts refuse to enforce it. On the other hand, courts do not desire to prohibit the parties from agreeing upon a reasonable sum as *liquidated damages* for breech of contract, especially where the possible damages are of such a nature they cannot be readily calculated or proved.

As might be expected, these conflicting aims pose a difficult problem. Frequently a stated sum is declared a penalty where the proof shows no commensurate injury; and the plaintiff is then limited to actual proved damages. *Heisen v. Westfall,* 86 Ill. App. 576; *Mercer County v. Stupp Bros. Bridge & Iron Co.,* 115 Ill. App. 298; *Pinta v. Kral,* 285 Ill. App. 232. Yet the very fact that it is difficult to prove the actual damage, may be the precise reason the parties stipulated for the stated compensation; and this is a sound basis for giving it full force as a provision for liquidated damages. *Weiss v. United States Fidelity & Guaranty Co.,* 300 Ill. 11; *Lu-Mi-Nus Signs, Inc. v. Jefferson Shoe Stores, Inc.,* 257 Ill. App. 150; 25 C. J. S. Damages § 107. As a result, it is impossible to state a rule of law which will provide an exact line of demarcation between a valid provision for liquidated damages, and an unenforceable provision for a penalty. Each case must be examined upon its own facts. *Giesecke v. Cullerton,* 280 Ill. 510.

The following are some, but not all, of the elements considered by the courts in an attempt to solve the problem. (1) The difficulty of proof of damages in certain cases as above mentioned. (2) The intention of the parties. While not conclusive, the intent of the parties to contract for a penalty or for liquidated damages, is important, and is to be determined from the whole contract, and the surrounding circumstances, *Berger v. Nants,* 172 Ill. App. 623; Illinois Digest, Damages, § 77. (3) The fact that the contract does not purport to require or prohibit a certain act, but merely gives the option to do a particular thing or, in the alternative, pay a stipulated sum. The court may then hold the party had his election. *McCullough v. Moore,* 111 Ill. App. 545; 25 C. J. S. Damages, § 110d. And in general:

"Whenever the damages were evidently the subject of calculation and adjustment between the parties, and

a certain sum was agreed upon and intended as com-
pensation, and is in fact reasonable in amount, it will
be allowed by the court as liquidated damages." *Van
Kannel v. Higley*, 172 Ill. App. 88, quoting from Sedg-
wick on Damages, 8th Ed. § 405.

 We here take judicial notice of facts of com-
mon knowledge and daily observation; at the date of
this contract, automobiles were in great demand and
short supply. New cars could readily be sold for con-
siderably more than established delivery prices. The
automobile industry, as a whole, was contenting itself
with what it deemed a reasonable profit on its sales,
foregoing the higher profits which were immediately
available. In spite of this prevailing custom, a sub-
stantial number of new cars would quickly appear
upon so-called "Used Car Lots," or were resold di-
rectly to a new purchaser, in either case, at advanced
prices.

We regard it reasonable to argue that the policy of
the industry was aimed at securing a measure of sta-
bility in its market. At some time in the future, cur-
rent purchasers would again become prospective
customers. But normal trade-in deals might be cur-
tailed if the prospective customers were deterred by
the necessity of taking a large loss in the value of
trade-in cars. Dealers might be forced to operate with
much smaller profit, or even at a loss, by allowing ex-
cessive amounts on trades, in order to maintain ade-
quate sales volume. It is evident that the industry had
reason to regard its price policy as a matter for its
future benefit, and to look upon anything subversive
thereof as a serious detriment, and a damage to its
prospects.

 It is admitted that the purpose of the agree-
ment now before us was to circumvent the so-called
"Black Market," (also called "Gray Market"). This
purpose is in no way contrary to public policy, or pro-
hibited by law. On the contrary, we have seen in other

fields, governmental attempts, usually ineffectual, to accomplish similar ends by force of law. If the courts refuse to enforce this type of contract, legitimate business would be left with no means of protecting itself from the adverse effects of over-pricing by speculators.

We say there would be no means of protection left, because, a plaintiff might suggest the general effect of such resales, yet in the individual case before the court, it would always remain impossible to measure in dollars the damage caused by that particular resale. Hence, according to the authorities previously cited, this is precisely the type of case in which an agreement specifying liquidated damages is desirable, and entitled to enforcement in the courts, provided the amount is reasonable.

In other jurisdictions, it has been suggested that the dealer has an interest in having the car remain in his own territory, where he may possibly have the business of servicing it. In our judgment, it is sufficient to face the facts as presented by the plaintiff. He has an interest, upon the broader grounds mentioned, in preventing so far as possible, inflationary resales of his merchandise. The question then arises whether the agreement is reasonable under the facts; also whether the agreement is against public policy.

It seems the parties have endeavored to calculate the difference between the selling price of the car and its current market value, and have used this as the basis of adjustment. We can conceive of no more reasonable basis of adjustment. The buyer is not prohibited from reselling, but if he does so, he gives up an amount calculated to be approximately equal to the expectable profit, thereby merely restoring him to the same financial position he had originally. The dealer conditionally waives the greater profit he could obtain, in favor of his customer, but retains his claim to it for a limited time, if the cus-

tomer does not choose to keep the car. The circumstances show an intention of the parties to avoid an immediate resale of the car, and that the amount to be paid in event of such resale is intended to put the parties in the same position they were before the original sale. We therefore hold that the amount specified is a reasonable sum for liquidated damages.

Upon the question of public policy, it is a general rule that restrictions upon resale of personal property (as well as real estate) are not favored in law. A contract providing for payment of an additional sum in event of resale may constitute such a restriction, and be held void as against public policy. But partial restrictions not detrimental to public interest may be valid. 24 R. C. L. 363 "Restrictions as to Use and Resale." See section 655. A restriction upon resale must be reasonable. *People v. Galskis,* 233 Ill. App. 414. Courts have recognized the inflationary effect of resales of scarce commodities, and have found a public interest in upholding contracts containing fair and reasonable provisions designed to curb this effect. *Fosburgh v. California & Hawaiian Sugar Refining Co.,* 291 Fed. 29.

In our opinion, based upon the facts before us, the contract in question is fair and reasonable, and is beneficial rather than prejudicial to the public interest, therefore it cannot be declared against public policy.

The trial court properly enforced the contract according to its terms, and the judgment is affirmed.

*Judgment affirmed.*

CULBERTSON, P. J., and BARDENS, J., concur.