Thomas B. Martindale, Inc., Appellant, v. Gorman.

Argued October 6, 1949. Before RHODES, P. J., DITHRICH, ROSS, ARNOLD and FINE, JJ. (HIRT and RENO, JJ., absent).

*Abram P. Piwosky*, with him *Sacks & Piwosky*, for appellant.

*McManus, Kenney & McCormick*, did not appear nor file a brief for appellee.

OPINION BY DITHRICH, J., January 12, 1950:

In this action in assumpsit instituted by plaintiff to recover a fixed amount of liquidated damages for the alleged breach of an option to repurchase an automobile, the learned court below, before whom the case was tried without a jury, found for the plaintiff but awarded it nominal damages only.

In finding for the plaintiff, in what was admittedly an effort to keep a "new" automobile off the "used" car market, the decision of the court was in line with the decisions in practically every case that has been brought to our attention or that we have been able to discover. There is no Pennsylvania appellate court decision directly in point. But in a comprehensive article in 10 U. of Pitt. L. Rev. 42, 53, it is stated that "The repurchase contracts are being upheld in nearly every case." And in 62 Harv. L. Rev., at page 320, it is noted in a discussion of *Larson Buick Co., Inc., v. Mosca*, 79 N. Y. Supp. 2d 654 (Sup. Ct.), a leading case on the subject—also discussed in 10 U. of Pitt. L. Rev., supra—that repurchase options have been upheld wherever challenged. In the *Larson* case the Court said, at page 655: "An honest dealer should be encouraged by the court (1) in his efforts to transfer his allotted quota of automobiles to bona fide individual purchasers, (2) in his attempt to comply with his agency contract, which bars a dealer from selling new cars to used car dealers, and

(3) in rescinding a transaction conceived in fraud."

But in restricting the plaintiff to a recovery of nominal damages only, the learned court was out of line with the most recent decisions not only in this but in other states.

The facts are not in controversy. Defendant bought a new Ford automobile from plaintiff corporation, a regularly franchised dealer, on November 5, 1947. He executed a repurchase agreement which provided, inter alia, that he would ". . . not sell or transfer the title to the said Automobile within the period of six (6) months . . . without first offering the said Automobile to the Dealer for purchase at the price at which it was sold by said Dealer to the Purchaser, less depreciation at the rate of three percent (3%) per month . . ." And provided further that if the purchaser should violate any of the terms of the repurchase option he would owe the dealer the sum of $300 "as liquidated damages."

About two months after executing the repurchase agreement, the defendant, without first offering the said automobile to appellant, sold it to another dealer as a trade-in on a DeSoto sedan, for which he was credited with the sum of $1500 against the purchase price of $2044.45, which appears to have been the manufacturer's list price. Appellant's used car manager testified that, in his opinion, a car similar to the one sold to defendant would have sold for $2100 on the day defendant breached his contract. He could not testify as to the actual condition of the car sold to defendant because he had breached his contract without first offering it to appellant, thereby denying him an opportunity to examine and appraise it.

The court below said, in an opinion overruling plaintiff's motions for judgment n. o. v. or a new trial: "The plaintiff claims the lump sum of $300, specified in the contract 'as liquidated damages', together with interest thereon from the date of the alleged breach, January 7,

1948. This claim, assuming an actionable breach to have been committed by the defendant, presents two questions: (1) whether or not the plaintiff suffered any loss, whether or not the evidence disclosed any actual damages by reason of the conduct of the defendant and (2) whether or not the provision for 'liquidated damages' is a provision in terrorem, intended to compel performance by threat of the imposition of a lump sum by way of forfeiture, thereby inflicting punishment for default in total disregard of damages actually sustained. These questions are interrelated. To determine the second, the first must be determined. Fundamentally the question is whether or not the plaintiff suffered any damages which are recoverable from the defendant. . . .

"It was contended that it was the purpose of the repurchase agreement to thwart the operation of a so-called 'black market' by a restraint upon the resale of the car for a six-months period. Of the existence of a 'black market,' its nature and operation there was no evidence. It seems that the court is to take judicial notice of the fact of its existence and to conclude as a matter of law that it was illegal and thereupon give judicial sanction to a recovery of damages by the plaintiff in a sum measured by the standard of such market."

The court then concluded that "there was neither a breach of the contract nor evidence to sustain a recovery other than nominal damages by reason of the defendant's failure to offer the car to the plaintiff for repurchase . . ."

In *Wade & Dunton, Inc., v. Gordon,* 64 A. 2d 422 (Supreme Judicial Court of Maine), a case on all fours with the instant case, the Court said, page 423: "The question whether the contract provision for the payment of $400 liquidated the damages to be recovered by the plaintiff in the event of a breach by the defendant, or sought to impose a penalty on the defendant, is one of

law. 15 Am. Jur. 673, Sec. 242, states this to be the general rule despite authority to the contrary." The Court held that a contract provision for the payment of $400, in the event of a breach of an agreement not to resell a new automobile for six months without first offering it to the dealer from which it was purchased at the price paid less depreciation, was a valid provision for liquidated damages and did not impose a penalty in view of the difficulty of measuring the elements of damage, particularly those relating to loss of good will and future business.

In *Burnett v. Nolen*, 336 Ill. App. 376, 84 N. E. 2d 155, where the purchaser of a 1947 Buick 40 Sedanett, at a purchase price of $2000, agreed to pay the dealer the sum of $500 in case he sold the said automobile within ninety days from the date of purchase without offering to sell it back to the dealer, the Court, in upholding the agreement, said, pages 381, 382: "We here take judicial notice of facts of common knowledge and daily observation; at the date of this contract, automobiles were in great demand and short supply. New cars could readily be sold for considerably more than established delivery prices. The automobile industry, as a whole, was contenting itself with what it deemed a reasonable profit on its sales, foregoing the higher profits which were immediately available. In spite of this prevailing custom, a substantial number of new cars would quickly appear upon so-called 'Used Car Lots,' or were resold directly to a new purchaser, in either case, at advanced prices. . . .

". . . If the courts refuse to enforce this type of contract, legitimate business would be left with no [effective] means of protecting itself from the adverse effects of over-pricing by speculators." (Emphasis added.)

In *Thomas B. Martindale, Inc., v. Dougherty*, 65 Mont. L. R. 186, the court held, in an opinion by President Judge KNIGHT, that the loss of opportunity to profit from

the resale of the automobile was clearly an element of damage. The court said, page 187: "Under the conditions existing in the motor vehicle market in the fall of 1947, we do not consider this an unreasonable restriction. In the fall of 1947 automobile dealers had to sell cars at the price listed by the manufacturer, but there was no ceiling on second hand cars. It was not uncommon in the hectic car market of those days, for the purchasers of new automobiles to immediately sell them as second hand cars, for a handsome profit. This was a matter of common knowledge. The agreement that the defendant signed was designed to protect rather than injure the public; it protected the honest dealer, and no bona fide buyer of a new car for his own use should object to signing it."

In *Becker-Mills, Inc., v. Bosher*, 68 D. & C. 115, a repurchase option agreement with liquidated damages in the sum of $500 was upheld.

Judgment in this case should have been entered for plaintiff in the sum of $321. The judgment is accordingly modified and, as so modified, affirmed.