Mary Helen Sharp and Walter L. Sharp, Plaintiffs-Appellants, v. Hospital Service Corporation, a Corporation, Defendant-Appellee.

Gen. No. 49,437.

First District, Fourth Division.

February 17, 1965.

Adler and Adler, of Chicago, for appellants.

Miller, Gorham, Wescott and Adams, of Chicago (John F. Arnold, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This appeal is from an order, entered on defendant's motion, dismissing plaintiffs' third amended complaint to recover benefits allegedly due them under a Blue Cross certificate of insurance issued by defendant. Plaintiff Mary Helen Sharp had been hospitalized for

117 days as a bed patient in a one-bed room, for which period defendant paid benefits at the rate of $10 per day. The amount claimed by plaintiffs represents the difference between the payment thus made and the amount which would have been paid at the rate of $21 per day if plaintiff had occupied a two-bed room for the same period of time.

Section II of the policy, entitled "Benefits and Conditions of Service," provides in its first subparagraph that a Member (the certificate holder, his spouse and unmarried children under 19) is entitled to "Hospital service" upon meeting numerous conditions the pertinent ones of which will be examined. The term, "Hospital service," is defined in Section I(n) as follows:

> (n) "Hospital Service" means receiving a Member who has been referred by a Physician, into a Plan hospital only as a bed patient in a room containing accommodations for two, but not more than four, bed patients, if available, and providing care for all types of cases, whether for acute, chronic, or pre-existing conditions, when necessary to and concurrent with service for conditions requiring and receiving hospital bed care. . . . It includes the following services and supplies for patients requiring and receiving hospital bed care: Room service; Meals, including special diets and infant feedings; . . .[1]

Returning to the "Benefits and Conditions of Service" as set forth in Section II, we find subparagraphs (i) and (j) of critical concern to the issues here presented. They are:

---

[1] Additional lengthy definitions of services and supplies are omitted as having no bearing on the issues of this case.

381

(i) If, at the time a Member applies for admission to a Plan hospital hereunder, there is available for his care a bed in a room regularly containing two beds, then the Member shall be entitled to such accommodations. If, at the time a Member applies for admission to a Plan hospital hereunder, no such bed in a two-bed room is available, then the Member agrees to accept accommodations in a room containing three or four beds for the duration of his hospital stay. If, at the time a Member applies for admission to a Plan hospital hereunder, there is not available for his care a bed in a room containing from two to four beds, the Member agrees temporarily to accept accommodations of a different classification until a bed in a room containing from two to four beds is available, at which time the Member agrees to be transferred to such bed.

(j) If for any reason during the Benefit period the Member occupies a bed in a room containing only one bed, the Plan will pay the Plan hospital's established charge, not to exceed $10.00 per day, for the room occupied; the Member shall pay to the Plan hospital . . . the difference, if any, between $10.00 per day and the Plan hospital's established charge.

Toward the end of achieving a result favorable to their claim, plaintiffs advance multiple theories, all of which involve interpretation of the parts of the insurance certificate quoted above.

██ ██ Plaintiffs' first argument concerns Section 13 of The Non-Profit Hospital Service Plan Act, which makes it the duty of the Director of Insurance to withhold approval of any insurance contract if it "contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that unreasonably or

382

deceptively affect the hospital service to be provided in the general coverage of the contract." [2] (Ill Rev Stats c 32, § 562a.)

From this plaintiffs argue that the certificate in the instant case is in violation of the statute because it gives a benefit in one section and then unreasonably takes it away in another, citing Shain v. Mutual Benefit, Health & Acc. Ass'n, 232 Iowa 1143, 1149, 7 NW2d 806 (1943), and Mutual Benefit, Health & Acc. Ass'n v. Ryder, 166 Va 446, 455, 456, 185 SE 894 (1936). Both of these opinions involved insurance policies which called for payment of substantial benefits for loss of life resulting directly and independently of all other causes from bodily injury sustained through purely accidental means. A different provision of the same policy stated that an accidental injury, fatal or otherwise, resulting from nineteen different enumerated conditions, would be paid for only as a sickness benefit in a lesser amount. In both cases the courts decided in favor of the broader coverage.

In the instant case, plaintiffs contend that the general coverage of the policy was to provide payment for hospital service, including the full room charge in all cases; and that the limitation of $10 per day for a one-bed room is, therefore, an unreasonable reduction of the general coverage.

■ Plaintiffs reach this result, however, by starting from a false premise. They obtain their broad meaning for the term "hospital service" by misreading its definition found in Section I(n), the language of

___

[2] In the absence of any allegation to the contrary, it must be assumed that the policy in question was approved by the Director of Insurance and that he properly discharged his official duties under the statute. Equitable Life Assur. Soc. v. Volk, 256 App Div 348, 10 NYS2d 59, 62; Hull v. Continental Illinois Nat. Bank & Trust Co., 177 F2d 217, 220. We no not, however, consider this court to be bound by such an administrative interpretation.

which pertains exclusively to accommodations in a room containing two, three-or-four beds in a Plan hospital. Thus Section II(j) does not unreasonably take away what was otherwise given, but, rather, does it provide a different benefit under a different factual situation, i. e., the use of a one-bed room.[3] Only if this section of the certificate had attempted unreasonably or deceptively to limit or reduce the amount which would otherwise be paid for the occupancy of a two, three-or-four-bed room would there be a proper analogy to the Shain and Ryder decisions.

Other subsidiary points are made in plaintiffs' contention that the policy contains unreasonable conditions.

■ They say that it is unreasonable for the contract to provide one rate for one type of accommodation and a lower rate for a different type when the latter is actually more expensive. We are aware of no principle of contract law, however, which requires a fixed ratio between insurance benefits and the different types of expenses covered.

Nor can we agree with plaintiffs that the contract phrase "bed in a room containing from two-to-four beds" merely establishes a maximum monetary limitation on the benefits for which defendant would be liable in regard to whatever room benefit an insured might become entitled. This simply is not the contract of the parties.

A kindred fallacy is present in plaintiffs' argument that benefits should be paid in this case at the two-bed

---

[3] We have not been asked to decide the point, but it seems probable that if it were not for Section II(i), (j), plaintiffs would not be entitled to the payment of any benefits under the policy.

Similarly, the policy provides a basic benefit of $6 per day for hospital services in a Non-Plan hospital, which would not be included in the definition of hospital service found in Section I(n).

rate because plaintiffs' occupancy of a one-bed room created no additional monetary burden on defendant over that which it would have incurred if a two-bed room had been occupied. As part of the same general point, it is contended also that the rate for a single room is void as a penalty, under the authority of White v. Mandel Bros., 248 Ill App 313, 318; Burnett v. Nolen, 336 Ill App 376, 379, 84 NE2d 155; and Scofield v. Thompkins, 95 Ill 190, 193; or void unless it is supported by further consideration to plaintiffs, citing Macks v. Macks, 329 Ill App 144, 151, 67 NE2d 505, and Smith v. Gray, 316 Ill 488, 496, 147 NE 459.

Premiums for all insurance policies must be determined by actuarial calculations based on the probability of predictable events. One such predictable fact in regard to the policy in question would certainly be that some Members of the Plan, for reasons of their own, and regardless of the lower benefits, would choose to occupy a single room. This probability translates itself into a lower premium. And a lower premium in the open competitive market for the hospital insurance dollar is undoubtedly a major factor in sales. Contracts paying a fixed daily benefit for hospitalization, without regard to the cost of services received, are available for a price. The rate structure is exceedingly complex, and all such policies are limited in one way or another. The special features of a particular contract will appeal to some buyers of insurance and not to others. Only an expert in the field can say which of the myriad policies available is best suited in a given situation, unless hindsight is employed, and that, of course, will not do. Even with all the facts available in the instant case we cannot be sure that, considering costs and benefits, plaintiffs did not make the most salutary purchase of insurance. This it is not our function to determine.

385

Legally speaking, however, we can and do feel sure that plaintiffs got what they paid for.

■■ Plaintiffs also urge that the policy is ambiguous and inconsistent in contravention of the statute referred to above (Ill Rev Stats c 32, § 562a), and that, in accordance with a general rule of contract construction, any ambiguity is to be resolved against the drafting party, citing Maretti v. Midland Nat. Ins. Co., 42 Ill App2d 17, 28, 190 NE2d 597. We concede the rule but consider it inapplicable in the absence of a demonstrated ambiguity. Craig v. Central Nat. Life Ins. Co., 16 Ill App2d 344, 349, 148 NE2d 31.

■■ Finally, plaintiffs attack Section II(j) as void for repugnancy to the general purpose of the policy, under a rule laid down in Olson v. Rossetter, 330 Ill App 304, 314, 71 NE2d 556, and Pflueger v. Broadway Trust & Sav. Bank, 265 Ill App 569, 593. Here again, however, plaintiffs state the general purpose and basic coverage of the policy too broadly. We find no such repugnance.

Accordingly, we hold that Section II(j) of the certificate is not void but, rather, has been properly invoked and interpreted to determine the extent of defendant's liability to plaintiffs. The order dismissing the cause of action is, therefore, affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.