PATRICK M. HENNESSY *et al.*

*v.*

WILLIAM G. METZGER.

*Filed at Ottawa October 29, 1894.*

1. DAMAGES—*penalty fixed by contract.* If a sum fixed by a contract as damages is in fact a penalty, and not liquidated damages, the measure of recovery is the actual loss.

2. SAME—*if the sum named is liquidated damages it must govern.* Where the sum fixed by the parties in the contract is liquidated damages, that sum must form the measure of recovery.

3. SAME—*liquidated damages not favored, but intention will control.* Courts lean to the construction which allows only loss actually sustained, but will consider the language used, the subject matter of the contract, and endeavor to find the true intent of the parties and to do justice between them.

4. SAME—*use of term "liquidated damages" not conclusive.* The fact that the parties use the words "liquidated damages," is not always conclusive that such damages are intended.

5. SAME—*fact that damages cannot be computed will be considered.* Where, from the nature of the contract and subject matter, the damages cannot be calculated with certainty, the sum named, if denominated liquidated damages, will usually be held such.

6. BUILDING CONTRACT — *architect's certificate — how far binding.* Where a building contract provides that the architect shall pass upon the work and certify as to the payments to be made, his decision is binding, and can only be attacked for fraud or mistake.

7. SAME—*architect's certificate a condition precedent to payment.* If provision is made for payment only upon the presentation of an architect's certificate, such certificate is a condition precedent to the right to require payment.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is an action of assumpsit begun on September 13, 1890, by appellants against appellee. The declaration contains the common counts for work done, materials furnished, moneys due and owing for interest, etc. The *ad damnum.* is $15,000.00. The pleas are, *first, non assumpsit* to the whole declaration, which was afterwards stricken out, and defendant deposited with the clerk $4419.20 which was paid to the plaintiffs; *second, non-assumpsit* except as to said sum of $4419.20; *third,* tender of said sum of $4419.20 on August 26, 1890; *fourth,* plea of failure to comply with the drawings and specifications in certain particulars, and that damages thereby resulted, which the defendant offers to set off.

Appellee, Metzger, owned land in Chicago, and in March, 1890, he and appellants, Hennessy Bros., entered into a written contract, as follows:

"Contract made March 8, 1890, between William G. Metzger (hereinafter called owner) and Hennessy Bros. (hereinafter called contractors). Said contractors agree that they will erect, build and complete, or cause to be erected, built and completed, (1) the masonry, (2) carpentry, (3) the painting and glazing, (4) and metal and roof work, for building to be erected in Chicago for said owner, according to drawings and specifications made by Burnham & Root, hereinafter called architects, which drawings and specifications shall be considered part of this contract.

"Said contractors agree to furnish, under the direction and supervision of said architects, (or their superintendent,) all the materials, workmanship and labor required by said drawings and specifications, and to remove all improper materials and work when directed by said architects, and will deliver said building to said owner, completely finished, at the time set forth in the specifications. Said owner agrees to pay to said contractors, upon presentation of certificates signed by said architects, the sum of $15,600.

"It is agreed that all damages for delay, as mentioned in the specifications, shall be deducted from the contract price as liquidated damages, and fifteen per cent of the value of all work done and materials furnished shall be held back until the contract is declared by said architects completed, or if contract is completed at specified time, said fifteen per cent kept back shall be paid forty days after the work of contract declared finished by architects. Said contractors agree to enter on the performance of contract at once, or as soon as, in judgment of architects, it is possible to do so, and hasten the work to completion.

"It is agreed that said owner may require any alterations in plans, material or workmanship that he may

deem proper, without annulling or invalidating this con-
tract; and in case of any such alterations or deviations
from the plans and specifications, involving an increased
or diminished expense in the parts so altered, the amount
thereof to be allowed to the contractors or owner shall
be such as may be equitable and just; and in case such
alterations or deviations require additional time for exe-
cution, a fair and reasonable amount shall be added to
the time stipulated for the completion of the said build-
ing, as set forth in the specifications.   And in case the
parties shall fail to agree as to the true value of extra
or deducted work or the amount of extra time, the deci-
sion of the architects shall be final and binding, the same
in case of any disagreement between the parties relating
to the performance of any covenant or agreement herein
contained.

"The said contractors hereby expressly waive all claim
or demand to any allowance for extra work or material
that may be furnished, unless, in each case, such extra
work or material shall have been furnished upon a writ-
ten order from the architects.   And should any dispute
arise respecting the true construction or meaning of the
drawings or specifications, the same shall be decided by
the architects, and their decision shall be final and con-
clusive.                    HENNESSY BROS.,      [Seal.]

                    WM. G. METZGER.      [Seal.]"

There were four sets of specifications prepared by said
architects for the mason, carpenter, metal and roof work,
and for the painting and glass, containing the following
provision:   "In order to secure the completion of the
work at the time and in the manner specified, it is hereby
declared and set forth that the damages arising from the
non-fulfillment of this contract shall be $50 per day for
each and every day the work remains undone after the
above date, which sum of damages shall be deducted from
the contract price, as liquidated."

The mill was completed and delivered to appellee on July 21, 1890. During the progress of the work appellee paid appellants $9500.00.

Plaintiffs put in evidence architects' certificate of August 25, 1890, and the statement of account thereto appended, as follows:

*"To W. G. Metzger:*                              *"Aug. 25, 1890.*

"Hennessy Bros., contractors for masonry, carpentry, painting and glass, and metal and roof work, on your building located S. E. corner of Eighteenth and Rockwell streets, are entitled to $4419.20.

Contract price...........$15,600.00—Total claim being......$13,919.20
Extras.....................   93.50

$15,693.50. less $1774.30 deductions.
On acc't of above we issued May 31, certificate No. 3, for ..$3500.00
    "         "         "   June 17,     "      No. 4, for... 3000.00
    "         "         "   July 14,     "      No. 5, for... 3000.00
    Statement attached.
This present certificate, No. 7, is for.........................$4419.20

    Final on contract and extras ..... .... ........ .........$13,919.20
    This certificate is issued upon an application and affidavit of said R. M. Hennessy, of Hennessy Bros., made Sept. 2, 1890, in accordance with the provisions of section 35 of law relating to subcontractors' liens, in force July 1, 1887.
                                            BURNHAM & ROOT.

*Statement of account.*

| | | |
|---|---|---|
| 1—Contract........................................ | | $15,600.00 |
| 2—Extra dimension stone....................... | | 25.00 |
| 3—Addition to boiler house doors ........... .... | | 12.00 |
| 4—13 anchors in boiler house...................... | | 16.00 |
| 5—Taking out two windows in north elevation... | | 18.50 |
| 6—Bricking up rear door................. ....... | | 22.00 |
| | | $15,693.50 |
| 1—Deductions rear according to sheet 14 of plans.............. ......... | $84.00 | |
| 2—Thin iron reduced its actual amount, light weight.............. ........ | 167.97 | |
| 3—1 car load of brick, 9000, at $6.50 .... | 58.50 | |
| 4—¼ keg of nails........... ........... | 1.20 | |
| 5—76—3x14—16 ft. long................ . | 93.63 | |
| 6—1000 ft. C. Norway 1¾.............:..... | 19.00 | |
| 7—Damages—time..................... | 1350.00 | |
| 8—By certificates..................... | 9500.00 | 11,274.30 |
| Balance ......................... | | $4,419.20 |

*[Left margin, rotated text:]* Received on account of amount claimed to be due us—not accepted in full.—Hennessy Bros.   Original was seen by me for first time on Sept. 2, 1890.—R. M. Hennessy.

Plaintiffs put in evidence the following two letters :

"*Hennessy Bros.:*                         "*August 25, 1890.*

"DEAR SIRS—The final certificate for balance due you on your contract, and extras, for work performed and materials furnished to Wm. G. Metzger, on the south-east corner of Eighteenth and Rockwell streets, is made out and signed by us, and we will deliver same to you as soon as you present us the affidavit prescribed by the lien laws.

"Yours truly,          BURNHAM & ROOT."

"*Hennessy Bros.:*                         "*August 26, 1890.*

"GENTLEMEN—I am ready and prepared to pay you a final certificate which will be given you by my architects, Burnham & Root.

"Very truly yours,          WM. G. METZGER."

About the 7th or 8th day of August, 1890, one of the Hennessy Brothers and his chief assistant had an interview with Burnham and his superintendents, at which Burnham decided that Hennessy Bros. were entitled to $93.50 for extras, and should be charged with $1774.30 for deductions. The sum of $1774.30 included an item of $1350.00 for twenty-seven days of delay at $50.00 per day from June 18 to July 21, 1890, excluding Sundays and the 4th of July. Hennessy Bros. objected to all of the deductions and insisted upon an allowance of $222.10 for extras. The amount which the architect decided to be due to appellants upon final settlement was $4419.20, while the amount claimed to be due by appellants is $6322.10. The difference about which the present contention arises is the sum of $1902.90. The architect made out the final certificate above set forth for $4419.20 on August 25, 1890. The attorney of appellants received this certificate from the bookkeeper of Burnham & Root on or about August 27, but under protest, stating that it was not received in full, but only on account. Some days

afterwards appellants' attorney demanded both of appellee and of Burnham a certificate for $6322.10, as the correct amount due. Burnham refused to give a certificate for any other amount than $4419.20, and, taking the certificate for that amount out of the attorney's hands, tendered it to him in full payment. The attorney refused to receive it as in full payment, but stated that it would be applied on account.

The case was tried before a jury in the court below, and a verdict was rendered in favor of the plaintiffs for $4419.20 only. Motion for new trial was overruled, and judgment rendered upon the verdict. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance by the appellants here, who were the plaintiffs in the trial court, and in whose favor the judgment there for $4419.20 was rendered.

Messrs. OSBORN BROS. & BURGETT, for the appellants :

Where one has entered into a special contract to perform work for another, and has done the work, but not in the time or manner stipulated by the agreement, still, if the work done is accepted and used by the other party, the latter is answerable for the amount he is benefited, upon an implied promise to pay for the value he has received, over and above the damages he has sustained on account of the breach of the special contract by the other party. *Adams* v. *Cosby,* 48 Ind. 153 ; *Castagnino* v. *Balleta,* 82 Cal. 250 ; *Hurst* v. *Litchfield,* 39 N. Y. 377 ; *Gregg* v. *Dunn,* 38 Mo. App. 283 ; *Blakeslee* v. *Hall,* 42 Conn. 226 ; *Vermont Street M. E. Church* v. *Brose,* 104 Ill. 206 ; *Todd* v. *Huntington,* 13 Ore. 9.

An architect's certificate must be produced when the suit is on common counts only, unless the owner has accepted or gone into possession and use of the work, and been benefited thereby. *Packard* v. *Van Schoick,* 58 Ill. 79 ; *Scoville* v. *Miller,* 40 Ill. App. 237 ; *Adams* v. *Cosby,* 48 Ind. 153 ; *Castagnino* v. *Balleta,* 82 Cal. 250.

An architect's certificate may be made a condition precedent to a recovery under a special count on the contract. *Michaelis* v. *Wolf*, 136 Ill. 68 ; *Barney* v. *Giles*, 120 id. 154 ; *Packard* v. *Van Schoick*, 58 id. 79 ; *Downey* v. *O'Donnell*, 86 id. 49 ; 92 id. 559.

Where a sum named is a penalty, only nominal damages can be recovered, in the absence of proof that the owner was injured by delay. *Clements* v. *Railroad Co.* 132 Pa. St. 445 ; *McCullough* v. *Manning*, id. 43 ; *Wilcus* v. *Kling*, 87 Ill. 107 ; *Brennan* v. *Clark*, 29 Neb. 385 ; *Taylor* v. *Sandiford*, 7 Wheat. 16.

A failure on the part of the party demanding performance, to do the preliminary work required in order to enable the other party to complete within the time limited, operates as a waiver of the time provision in the contract. *Stewart* v. *Keteltas*, 36 N. Y. 388 ; *Weeks* v. *Little*, 89 id. 566 ; *Gruber* v. *Schultheiss*, 57 id. 669 ; *Gallaher* v. *Nichols*, 60 id. 438 ; *Williams* v. *Shields*, 30 id. 556 ; *Doyle* v. *Halpin*, 1 J. & S. 352 ; *Board* v. *Burr*, 3 id. 522 ; *Mulholland* v. *Mayor*, 22 N. Y. 347 ; 113 id. 631 ; *Beinhauer* v. *Gleason*, 15 id. 227 ; *Dannot* v. *Fuller*, 120 id. 554.

Mr. L. H. BISBEE, and Mr. W. N. GEMMILL, for the appellee :

When the parties, in their contract, fix the amount of damages which shall be paid by the party in default, and the amount so fixed is not unconscionable or unreasonable, they will be held strictly to their contract. But if the amount of damages is greatly in excess of the loss that would naturally result from a breach of the contract, then the liquidated damages will be regarded as a penalty for non-performance. *Smith* v. *Whitacre*, 23 Ill. 367 ; *Stevens* v. *Coffens*, 39 id. 148 ; *Bagby* v. *Reddie*, 16 N. Y. 469 ; *Leland* v. *Stone*, 10 Mass. 462 ; *Hasbrouck* v. *Tappan*, 15 Johns. 200.

The rule seems to be absolute, that where a building contract makes the architect the arbitrator between the contractor and the owner, the certificate of that architect can only be impeached for fraud or mistake. *Board of*

*Trustees* v. *Lynch,* 5 Gilm. 521 ; *McAuley* v. *Carter,* 22 Ill. 53 ; *Railroad Co.* v. *Spurck,* 24 id. 587; *Wallace* v. *Curtis,* 36 id. 156 ; *Korf* v. *Lill,* 70 id. 420 ; *Snell* v. *Brown,* 71 id. 133 ; *Coey* v. *Lehman,* 79 id. 173 ; *Taylor* v. *Renn,* 79 id. 181 ; *McAvoy* v. *Long,* 13 id. 147; *Michaelis* v. *Wolf,* 136 id. 68 ; *Vermont Street M. E. Church* v. *Brose,* 104 id. 206 ; *Flower* v. *Dakeman,* 84 id. 130 ; *Finney* v. *Condon,* 86 id. 78 ; *Bournique* v. *Arnold,* 33 Ill. App. 303 ; *Frick* v. *Lyon,* 3 Scam. 324 ; *Downey* v. *O'Donnell,* 86 Ill. 48 ; *Weintz* v. *Hafner,* 78 id. 27; *Ballance* v. *Underhill,* 3 Scam. 453 ; *Packard* v. *Van Schoick,* 58 Ill. 78 ; *Newton* v. *Dunham,* 60 id. 233 ; *United States* v. *Robeson,* 9 Pet. 319 ; *Hathan* v. *East India Co.* 1 T. R. 639 ; *Easton* v. *Canal Co.* 13 Ohio, 79 ; *Herrick* v. *Railroad Co.* 27 Vt. 672.

Mr. JUSTICE MAGRUDER delivered the opinion of the court :

The principal question in this case is, whether or not the architects, in fixing the amount of the final certificate, had a right to deduct the item of $1350.00. This amount represented damages for delay at $50.00 per day for 27 days. By the terms of the specifications, the work was to be completed by June 1. It was not completed until July 21. The architect decided, that the appellants were chargeable with 27 days of delay at $50.00 per day between June 18 and July 21. By holding that they were not chargeable with delay until June 18, he held that the delay from June 1 to June 18 was proper and excusable.

By the terms of the contract, "it is agreed, that all damages for delay as mentioned in the specifications shall be deducted from the contract price as liquidated damages." As the contract price was to be paid out "upon presentation of certificates signed by said architects," the deduction was necessarily to be made by the architects, in order to determine the amounts for which the certificates should be issued. The deduction was to be made of "all damages for delay as mentioned in the specifications." What damages are mentioned in the specifications?

The specifications provide, that, "in order to secure the completion of the work at the time and in the manner specified, it is hereby declared and set forth, that the damages, arising from the nonfulfillment of this contract, shall be $50.00 per day for each and every day the work remains undone after the above date, which sum of damages shall be deducted from the contract price as liquidated damages." Are appellants chargeable with damages at $50.00 per day for the time following the day fixed by the agreement for the completion of the work, or are they chargeable only with such actual damages as may have resulted from their delay?

Whether the sum fixed by the contract is to govern, or whether the actual damages are to be considered, depends upon the question whether the stipulated amount is to be regarded as a penalty, or as liquidated damages. If it be a penalty, no other sum can be recovered or allowed than that which will compensate for the actual loss. If the amount named in the contract be regarded as liquidated damages, it forms the measure of damages, and the jury are confined to it. (Sedgwick on Meas. of Das. —6 ed.—pages [396], [397].) In order to determine whether the stipulated sum is a penalty or liquidated damages, the court will consider the language used, the subject matter of the contract, and the intention of the parties. The fact, that the parties use the words, "liquidated damages," in their agreement, does not always determine the question. (*Scofield* v. *Tompkins*, 95 Ill. 190; Sedgwick on Damages,—6 ed.—marg. page 399).

In the present case, however, these words are not only used in the specifications, but in the main body of the contract. Their repetition would seem to indicate, that it was the intention of the parties to have the damages for delay fixed at a particular sum, so as to be deducted from the contract price before the certificates of the architects should be issued. The courts generally show a disposition to lean towards that construction, which excludes

the idea of liquidated damages, and permits the party to recover only the damage which he has actually sustained. (Sedgwick on Meas. of Das. marg. page 399). But the effort of the court will be to get at the true intent of the parties, and to do justice between them. (Sedg. on Meas. of Das. marg. page 421). Here, we are inclined to think, that a careful study of all the provisions of the contract, and of the specifications which are to be considered a part of the contract, reveals an intention to fix upon damages which are liquidated, stipulated or stated ; that is to say, to agree upon a definite sum, as that which shall be paid to the party who alleges and establishes the violation of the agreement. (Sedg. on Meas. of Das. marg. page 398).

Where the parties to a building contract agree, that the architect shall pass upon the work and certify as to the payments to be made, his decision is binding, and can only be attacked for fraud or evident mistake. (*McAuley* v. *Carter*, 22 Ill. 53 ; *Korf* v. *Lull*, 70 id. 420). In such a contract, if provision is made for payment of the price upon the presentation of the architect's certificate, the obtaining of such certificate is a condition precedent to the right to require payment, and an action cannot, as a general rule, be maintained to recover the money until the certificate has been obtained from the architect. (*Michaelis* v. *Wolf*, 136 Ill. 68 ; *Arnold* v. *Bournique*, 144 id. 132). Here, not only is it agreed, that the owner is to pay the contract price of $15,600.00 upon presentation of certificates signed by the architects, but the decision of the architects is made final as to certain matters upon which they are authorized to pass.

If the parties fail to agree as to the true value of extra or deducted work, the decision of the architects shall be final and binding. The proof tends to show that there was a disagreement upon these subjects, and there is no reason why the decision of the architects in relation thereto should not be regarded as final. The con-

tract provides, that, in case the alterations or deviations required by the owner call for additional time for execution, a fair and reasonable amount shall be added to the time stipulated for the completion of the said building as set forth in the specifications; and that, as to the amount of extra time, the decision of the architects shall be final and binding. The proof tends to show, that there was a disagreement upon this subject; and, as the architects allowed 18 days for such extra time, we see no reason why the allowance should not be accepted. The contract provides, that the decision of the architects shall be final and binding, "in case of any disagreement between the parties relating to the performance of any covenant or agreement herein contained." One of the agreements contained in the contract is, that all damages for delay as mentioned in the specifications shall be deducted from the contract price as liquidated damages. The proof tends to show, that there was a disagreement upon this subject. The architects were just as much empowered to decide upon the performance of this agreement for the deduction of the stipulated damages, as upon the performance of any other agreement in the contract. They had the power, also, to make a final and conclusive decision respecting the construction or meaning of the specifications, in case of any dispute in relation thereto. This included that portion of the specifications in relation to damages, as well as any other portion thereof.

It is said, however, that, where the clause fixing the amount of the damages appears to have been inserted to secure prompt performance of the agreement, it will be treated as a penalty, and no more than the actual damages proved can be recovered. (*Scofield* v. *Tompkins, supra*). We do not think that this rule is applicable to the damage clause in the specifications here. The specifications are to be considered as a part of the contract. The contract and specifications are one instrument. Although the specifications designate June 1 as the date for the

completion of the work, yet the contract provides that
the additional time to be allowed, which in this case was
18 days, shall be added to the time for the completion of
the work as set forth in the specifications. Where, there-
fore, the specifications declare, that the damages arising
from the nonfulfillment of the contract shall be $50.00
per day for each and every day the work remains undone
"after the above date," in order to secure the completion
of the work "at the time and in the manner specified;" the
reference must be understood to be, not to the precise
time or.date specified, as, for instance, June 1, but to the
time or date as fixed by the addition of such extra time as
has been made necessary by the alterations or deviations
referred to, and as has been decided upon by the archi-
tects; that is to say, June 18. So, the words, "in the
manner specified," do not refer exclusively to the details
of the work set out in the specifications as originally
drawn, but to said details as modified or changed by the
alterations which the owner is allowed to make. The
damages are not allowed as a mere penalty for the non-
completion of the contract at the time and according to
the terms originally designated, but for a failure to com-
plete it at the time and according to the terms, which
may be decided to be "equitable and just," and "fair and
reasonable," in view of allowable alterations or devia-
tions.

It is evident, that it would be quite difficult to ascer-
tain the damages resulting from delay in the completion
of a mill, built, as this was, to be used for the manufac-
ture of linseed oil. Where from the nature of the con-
tract, the damages cannot be calculated with any degree
of certainty, the stipulated sum will usually be held to
be liquidated damages, where they are so denominated
in the instrument. (Sedg. on Meas. of Das. marg. page
422; *Lynde* v. *Thompson*, 2 Allen, 456; *Texas and St. L. Ry.
Co.* v. *Rust*, 19 Fed. Rep. 239; *Wolf* v. *Des Moines*, 64 Iowa,
380; *Cushing* v. *Drew*, 97 Mass. 445; *Consolidated Coal Co.* v.

*Peers,* 150 Ill. 344 ; 5 Am. & Eng. Enc. of Law, page 25, and cases in notes). It has been held, that damages for delay in completing a house are such uncertain damages, as indicate an intention to agree upon a fixed measure of damages, and not to name a sum as a penalty merely. (*Hall* v. *Crowley,* 5 Allen, 304).

For the reasons here stated, we are of the opinion, that the trial court did not err in instructing the jury, that the plaintiffs were entitled to recover the contract price together with the value of the extra work, less deductions and less damages on account of failure to complete the building according to the contract, unless they should find, under the evidence and the instructions of the court, that the plaintiffs were concluded by the certificate of the architects as to such extras, deductions and damages.

The question whether, in fixing the amount of the final certificate, the architects acted fraudulently, capriciously, arbitrarily or unreasonably, or failed to exercise their judgment honestly, impartially, and free from bias in favor of the defendant, was submitted to the jury by the instructions of the court ; and upon this question, which is one of fact, the judgment of the Appellate Court is final, so far as we are concerned.

After a careful examination of the whole record in this case, we are satisfied that the judgment of the trial court, as affirmed by the Appellate Court, does justice between the parties, and that there is no sufficient reason for a reversal of the judgment of the latter Court.

The judgments of the Appellate and Circuit Courts are affirmed.

                                        *Judgment affirmed.*