**UNITED ORDER OF AMERICAN BRICKLAYERS AND STONE MASONS UNION NO. 21, Plaintiff-Appellant,**

v.

**THORLEIF LARSEN AND SON, INCORPORATED, Defendant-Appellee.**

No. 74–1404.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1975.

Decided July 29, 1975.

Eugene I. Pavalon, John S. Adler, Chicago, Ill., for plaintiff-appellant.

James E. O'Halloran, Jr., Robert W. Sheppy, Chicago, Ill., for defendant-appellee.

Before PELL and TONE, Circuit Judges, and JAMESON, Senior District Judge.*

PELL, Circuit Judge.

The sole issue in this appeal is whether a "liquidated damages" provision in a contract between the parties is enforceable as denominated or is unenforceable as a penalty. Plaintiff brought suit in the district court against defendant, an employer, pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq.*, to recover money due jointly administered fringe benefit funds plus "liquidated damages" which had accrued under the provisions of the contract as a result of payments being made after the due dates. The only contested issue in the case was the validity of the liquidated damages provision. The district court found the provision unenforceable as a penalty and granted summary judgment for the defendant. This appeal resulted.

The portion of the contract in issue provides:

"Any Employer failing to make prompt and timely payment of the contribution to the Masonry Institute or to the Pension Fund or to the Apprenticeship Program in accordance with this Agreement, shall in addition to the aforesaid hourly contributions pay an additional amount of ten (10%) percent of the amount due in liquidated damages for failure to pay in accordance with this Agreement.

"If delinquency continues uncured for forty-eight (48) hours after written notice of such delinquency is mailed or delivered to the delinquent employer, the Employer shall be liable for claims for the extent of benefits to which the employee would have been entitled if the Employer had made the required contributions, and for all contributions and liquidated damages due thereunder, plus all reasonable legal fees incurred by the Masonry Institute, the Trustees of the Apprenticeship Program or the Pension Fund in enforcing the payment thereof."

Both parties agree that § 339 of the Second Restatement of Contracts sets forth the applicable standard for determining whether the agreement should be enforced:

"An Agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." [1]

Plaintiff argues that the harm caused is difficult to estimate and that the provision was negotiated at arm's length between parties of equal bargaining strength. Defendant argues that use of the term "liquidated damages" in the contract does not preclude a court from determining that the provision actually provides a penalty and that the amount provided is unreasonable because it fails to take into account the length of the delay.

■■ Courts often state that the intention of the parties is the key to deciding whether a provision is to be considered a penalty or liquidated damages. *E. g. Kothe v. Taylor Trust,* 280 U.S. 224, 226, 50 S.Ct. 142, 74 L.Ed. 382 (1930); *Wise v. United States,* 249 U.S.

* Senior District Judge William J. Jameson of the United States District Court for the District of Montana is sitting by designation.

1. For a general discussion of standards, *see* 5 S. Williston, Williston on Contracts §§ 783, 784 (1961). For a general discussion of the problems of applying standards, *see* 5 A. Corbin, Corbin on Contracts § 1057 (1964).

361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919); *Parker-Washington Co. v. Chicago,* 267 Ill. 136, 139, 107 N.E. 872 (1915). Nevertheless, use of the term "liquidated damages" by the parties is not conclusive, *United States v. Bethlehem Steel Co.,* 205 U.S. 105, 120, 27 S.Ct. 450, 51 L.Ed. 731 (1907); *Giesecke v. Cullerton,* 280 Ill. 510, 513, 117 N.E. 777 (1917); *Parker-Washington Co. v. Chicago, supra;* A. Corbin, *Corbin on Contracts* § 1058 at 337 (1964); but the terms chosen by the parties should be given some evidentiary value. 5 S. Williston, *Williston on Contracts* § 778 at 690–91 (1961). Thus, in relation to this issue determination of the parties intentions must be an inquiry of broader scope than interpretation of their language. In issue is whether they have made a good faith attempt to name a sum as an equivalent of the damages that they anticipate from breach. Williston, *supra,* § 778 at 693. In contrast, a penalty is a sum which is disproportionate to anticipated damages "which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion." Williston, *supra,* § 776 at 668.

■ A critical question thus becomes whether the damages stipulated are so unreasonable that we should refuse on the grounds of the public policy against enforcing penalties to enforce the agreement of the parties to pay the sum and ignore their agreed-upon statement that the sum is to be considered as liquidated damages. In determining whether the amount stated is unreasonable, we must view it in relation to damages which could be reasonably anticipated at the time of making the contract. *Bethlehem Steel Co. v. Chicago,* 234 F.Supp. 726, 729 (N.D.Ill.1964), aff'd 350 F.2d 649 (7th Cir. 1965) (opinion of the district court adopted as the opinion of the 7th Cir.); *Parker-Washington, supra* 267 Ill. at 141, 107 N.E. 872. The law is clear that the unreasonable nature of the sum provided is sufficient grounds for finding that it was intended to be a penalty. *Kothe, supra* 280 U.S. at 226, 50 S.Ct. 142; *Mel-*

*lor v. Budget Advisors Inc.,* 415 F.2d 1218 (7th Cir. 1969).

In this case the damages that could be anticipated included: the loss of the benefits of the use of the funds, increased administrative costs resulting from collection efforts, the difficulties the trustees would have in forecasting receipts, and possible loss of benefits to employees. Although the contract made the employer liable for any benefits lost by employees, the value of this liability was contingent on his ability to pay. The extent of these damages vary with the size of the contribution not made and the length of the delay. The damages specified are proportionate to the size of the contribution because they are a percentage of it. They are not proportionate to the length of the delay; regardless of the length of the delay, the damages are the same percentage of the total sum due. This is in contrast to an agreement made subsequent to the one in issue in which liquidated damages were agreed to be one half percent of the unpaid balance per month.

The liquidated damages provision in issue had been in the various contracts between plaintiff and the Employers' Association from 1957 to 1973. The parties differ somewhat as to the relevance of the fact that when the defendant became an individual signatory to the agreement, the change indicated in the text, *supra,* was made effective. The plaintiff argues that the district court, while stating that the new clause "is not particularly relevant to the construction of the contract in issue," nevertheless relied upon it by stating that it "neatly illustrates the difference between liquidated damages and a penalty." The defendant would appear to find some relevance in the change in answering the argument concerning arm's length bargaining by referring to the fact that the change was made when the defendant itself became a signatory to the agreement rather than being merely a member of the bargaining Mason Contractors' Association. We note, however, that at the time the change became ef-

fective controversy over the provision here in issue had already developed. Further, aside from the aspect of penalty versus liquidated damages, there are independent incentive factors supporting the change. Once a delinquency occurred and the amount became fixed at 10% there would be no incentive upon the employer to take steps to bring itself into compliance with the requirements of the contract because the amount would not increase. Assuming that the union desired to see that the payments were made promptly even though the due date had passed, and we discern no reason in the record for thinking to the contrary, this objective would better be accomplished by the continuing incentive of increasing percentages. On the other hand, from the employer's point of view there was less initial exposure monetarily by the changed provision. In any event, we are of the opinion that the district court was correct in ascribing no particular relevance to the change. We find analogy in well established law that the inference that premises were unsafe should not be drawn from repairing done subsequent to an accident. We decline to infer from the changed item that plaintiff was admitting that the prior provision would not stand up legally as liquidated damages. Even if it were thought that the changed provision might be less subject to attack, resort to a more arguably safe position does not mean that the position left would not, upon final challenge, prove to be also valid.

■ Where damages are specified for failure to pay a sum of money and those damages amount to more than the money's interest value, courts generally find that the specified damages are a penalty unless some special injury exists. See Corbin, *supra* § 1065. However, in our opinion, the plaintiff demonstrated on the record anticipated damages greater than the mere loss of the use of the funds by the trust. Various checking and follow up procedures had to be employed in the event of nonpayment. These involved both correspondence and field personal visitations. Further, "if the delinquency continues to a point where a bricklayer would have insufficient credited hours to maintain his insurance, the administrative office is required to send a self-contribution notice to the bricklayer involved, advising that there are insufficient contributions on his behalf and that in order to retain benefits due him under the provisions providing for the payment of benefits by the said funds, it is necessary for him to make the contributions; [t]hat thereby if the employer pays the delinquent contributions which have been made by the bricklayer involved, it is necessary for affiant to refund the bricklayers contributions." The affidavits also describe other complicating factors and variables that would be involved.

We do not find that the defendant has negated the fact that the asserted results would come into play following nonpayment. We do not share the optimistic curt dismissal of the subject advanced by defendant that "[a]ny correspondent costs of administration attendant to a delay in payment are easily calculated." Indeed, the record keeping involved in arriving at a precise determination of administrative costs might in itself provide a substantial cost. In any event, we cannot be unmindful that what we are dealing with is not an after-the-fact cost determination but a contractually agreed-upon-in-advance-of-delinquency estimate of what is a reasonable likelihood of cost.

The very use of a liquidated damages provision, in addition to avoiding controversy (or at least that is the hope), presupposes some uncertainty of the amount of damages resulting from the triggering breach or delinquency. Uncertainty of the exact amount of resultant damages is a principal factor which causes contracting parties in advance of disputation to fix upon a basis of damages which is reasonably related to those which are likely to result.

■ The most serious problem with the present damage provision is its fail-

ure to make the damages proportional to the length of the delay in payment. Where identical sums are stipulated as damages regardless of the degree of breach, courts often find this to show that the parties could not have intended the sum to be liquidated damages. *Parker-Washington, supra* 267 Ill. at 140, 107 N.E. 872; Corbin, *supra* § 1066. Williston states:

> "A lump sum made payable for any delay whatever beyond a stipulated date is obnoxious to the objection of giving the same damages for a small breach as a large one, and should not be allowed, unless any delay whatever is totally destructive of the value of performance." (footnotes omitted.) Williston, *supra* § 785 at 740.

Nevertheless, courts have sometimes allowed recovery of liquidated damages even though they are not as well tailored as they might have been.

In *Wise v. United States, supra,* the Supreme Court allowed recovery of $200.00 per day liquidated damages for failure of a contractor to complete construction of a building. The contractor had argued that the contract was for the construction of two buildings and that damages could not have been intended because the same amount was specified regardless of whether one or both buildings were incomplete. The Court enforced the provision stating:

> "[courts] look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts and because adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense." 249 U.S. at 366, 39 S.Ct. at 304.

The case at bar presents a parallel but opposite set of facts to *Wise.* In both cases damages vary with the magnitude of the breach and with the length of the breach. In *Wise* the liquidated damage provision took into account the length of the delay by making it per diem but failed to take into account the magnitude of the breach. In this case the magnitude of the breach is factored in but not the length.

While in the sense of relation to the duration of a default the percentage basis for liquidated damages as utilized here is a set, fixed, or lump sum in that it does not increase as time goes on, it is not fixed in the sense of being specified as an exact number of dollars. Being based on the amount of the payment due but not paid, the amount determined by application of the 10% will bear a direct relationship to the amount of the dereliction in payment. It therefore is not, as appellee contends, *totally* inflexible.

Returning to the two-pronged Restatement standard adverted to earlier in this opinion, while the two facets are tied by a conjunction, we deem the initial significant inquiry should be directed to the difficulty of advance accurate estimation. This, of necessity, will have a controlling effect on the reasonableness of the forecast of just compensation because the greater the difficulty of estimating the damages, the greater will have to be the latitude accorded to the determination of the reasonableness of the forecast. Conversely, if the damages are easily ascertainable, very slight variation from the amount so determinable should be all that would be permissible.

For that reason an examination of the context in which the penalty-liquidated damages issue has been determined is appropriate. If the case involves nothing more than the withholding of a single fixed sum due, then the price at which a like sum could be secured in the money market would seem to provide the answer. Likewise, although not as easy in an inflationary market, the cost of a substitute builder in the event of a default by a contractor lends itself to some exactitude of estimation.

Other contextual factors may be of importance. Thus, in *Kothe, supra,* while the Court, 280 U.S. at 226, 50 S.Ct. at 143, observed that the amount was

"so disproportionate to any damage reasonably to be anticipated in the circumstances," that it must be considered a penalty, the Court also considered the case in the bankruptcy context in which it occurred. The bankruptcy estate, not the lessee, would be making the payment. The lessee had under these circumstances little concern with the amount paid. The Court then concluded that the broad purpose of the Bankruptcy Act to bring about an equitable distribution would be defeated and "[a]ny agreement which tends to defeat that beneficent design must be regarded with disfavor." *Id.* at 227, 50 S.Ct. at 143.

Conversely, we discern what we deem to be an underlying favorable climate in the cases affecting the laboring person's income. Thus, in *Overnight Motor Transportation Co., Inc. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1223, 86 L.Ed. 1682 (1942) the Supreme Court had no difficulty in determining that the liquidated damages provision of the Fair Labor Standards Act (an amount equal to the amount improperly not paid) was compensation and not a penalty. "The retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." In the present case, the compensation involved is in the form of fringe benefits, rather than direct wages; however, in the present age when many persons do not work until the grave, pension and similar benefits are not without significance.

In *Weber v. Anspach,* 256 Or. 479, 473 P.2d 1011 (1970), the Oregon Supreme Court upheld a provision allowing 10% liquidated damages for failure to make pension deposits on time. The court observed that damages such as additional administrative burden and collection efforts were difficult to estimate. Defendant concedes "that the contract provision in that case was virtually identical to the provision at issue in the case at bar" but argues that it is not controlling and is wrongly decided.

Three other cases have been cited to us which have allowed similar liquidated damages provisions to be enforced.

*United States v. Carter,* 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957); *Irvings of Yonkers, Inc.,* 42 Lab.Arb. 469 (1964); *Miami Bagel Bakery,* 33 Lab.Arb. 413 (1959).

In these three cases liquidated damages provisions were enforced without discussion of the penalty issue. Nevertheless, *Carter* contains some interesting parallels to the present case. *Carter* actually involved the extent of the liability of a surety on a payment bond furnished by a contractor, as required by the Miller Act, for the protection of persons supplying labor in the construction of federal public buildings. The union contract involved obligated the employer in addition to wages to pay a stipulated hourly amount into a health and welfare fund, i. e., a fringe benefit fund. The employees had no right, title, or interest in the contributions to the fund, and it was expressly stated that the contributions "shall not constitute or be deemed to be wages" due the employees. The fund trustees were charged with collecting the payment of the employer contributions. Any installment not paid by the 25th of the month in which it became due was delinquent, and the sum of $20 per delinquency or 10% of the amount due, whichever was greater, "was owed by the delinquent employer as liquidated damages and not as a penalty." *Id.,* 353 U.S. at 214, 77 S.Ct. at 795.

The Court in holding that the trustees had standing to proceed under the Miller Act threw the following illumination on the matter of this type of fringe benefit:

"The Act, however, does not limit recovery on the statutory bond to 'wages.' The parties have stipulated that contributions to the fund were part of the consideration Carter agreed to pay for the services of laborers on his construction jobs. The unpaid contributions were a part of the compensation for the work to be done by Carter's employees. The relation of the contributions to the work done is emphasized by the fact that their amount was measured by the exact number of hours each employee performed services for Carter. Not until

the required contributions have been made will Carter's employees have been 'paid in full' for their labor in accordance with the collective-bargaining agreements." *Id.* at 217–18, 77 S.Ct. at 797.

\*    \*    \*    \*    \*    \*

"The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, these contributions are in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash.

"The trustees' claim for liquidated damages, attorneys' fees, court costs and other related expenses of this litigation has equal merit. The contractor's obligation to pay these items is set forth in the trust agreement. It is stipulated that they form a part of the consideration which Carter agreed to pay for services performed by his employees. If the employees are to be 'paid in full' the 'sums justly due' to them, these items must be included." *Id.* at 220, 77 S.Ct. at 798.

In the case before us, while there was no comparable stipulation of the parties, it is clear that the defendant contractually agreed to make the contributions and to pay an additional 10% if the payment was not made in time. This would appear to be "a part of the consideration which [the appellee] agreed to pay for services performed by his employees."

An underlying purpose of a labor agreement is to provide for a period of industrial harmony between labor and management. It is in keeping with the spirit of our federal labor relations policy that labor contracts are to be enforced as negotiated by the parties. While the difficulties of the advance accurate estimation of damages are otherwise adequately demonstrated in the present case, we do note the difficulty, if not impossibility, of quantifying the intangible damages to labor-management harmony resulting from failure to comply with provisions which have been hammered out in bargaining sessions.

We are satisfied that the plaintiff has clearly established that the harm caused by the breach is one that is very difficult of accurate estimation. That having been established, we are unable to say under the particular circumstances of this negotiated labor contract that the amount so fixed is not within the range of a reasonable forecast of just compensation for the harm caused by the breach. Restatement, *supra.*

Accordingly the judgment is reversed and the case is remanded for the entry of summary judgment for the plaintiff in accordance with this opinion.