NORMAN PIERCE *et al.*, Plaintiffs-Appellants, *v.* B & C ELECTRIC, INC., Defendant-Appellee.

First District (1st Division)    No. 81-0282

Opinion filed February 1, 1982.

310

Edwin H. Conger and Karen S. Quandt, both of Tenney & Bentley, of Chicago, for appellants.

No brief filed for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, known collectively as the Electrical Insurance Trustees, filed suit against defendant B & C Electric, Inc., for $2944.24 and costs under the liquidated damage provision of a collective bargaining agreement for the late payment between October 1977 and August 1978 by defendant of fringe benefit contributions on behalf of its employees. At the end of a bench trial, the court found that the provision was a penalty, rather than liquidated damages, and entered judgment for defendant. Plaintiffs appeal, contending that the trial court erroneously found as it did and that the judgment for defendant should be reversed and judgment entered for them in the amount of $2944.24 and costs.

■■ Defendant has failed to file in this court. In accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493, we will consider plaintiffs' appeal on its merits.

Defendant is an employer of union workers of Local Union 134, International Brotherhood of Electrical Workers. By letters of assent, defendant agreed to be bound by provisions contained in the collective bargaining agreement between the Electrical Contractors' Association of the City of Chicago and Local Union 134, International Brotherhood of Electrical Workers. In pertinent part, that agreement provides:

"[Article XVII, section 9]

The Payroll Report for Participating Employers and a single check payable to Electrical Insurance Trustees covering the Employer's contribution for fringe benefits and the deductions made from the wages of Employees shall be sent monthly to:

> Electrical Insurance Trustees
> 228 North LaSalle Street, Room 2212
> Chicago, Illinois 60601
> Phone: ST 2-5442."

"[Article XVIII, section 1]

° ° ° The payment and the payroll report shall be mailed to reach the office of the appropriate Local Board not later than fifteen (15) calendar days following the end of each calendar month."

"[Article XIX, section 1]

Employers who fail to have sufficient funds in the bank to meet all pay checks issued to Employees covered hereby, and checks issued to cover contributions as outlined above, shall be penalized by the Electrical Joint Arbitration Board. *Liquidated damages in the amount of 10% will be assessed on all contributions and deductions not paid within fifteen (15) days.* Such assessments shall be disbursed proportionately into various Trust Funds." (Emphasis added.)

For the months of October 1977 through August 1978, defendant's fringe benefit contributions were made after the 15th calendar day following the end of each calendar month. The lateness ranged between 20 and 67 days.

Plaintiffs moved for summary judgment, supported by the affidavit of Ralph Hogan, the manager of Electrical Insurance Trustees. This motion was denied. At the bench trial, Ralph Hogan was the only witness. He testified that if fringe benefit contributions are not submitted by an employer by the 15th day of a month, an employee's medical and dental insurance is suspended and at the end of the quarter in which contribution payments are not made, an employee's vacation fund is terminated. Often, upon receiving a termination notice, an employee or his spouse will complain to the Trustee's employees in an abusive manner. If contribution payments are received after the employee's benefits were terminated, the process of termination has to be reversed to reinstate the benefits. Five hundred employers participate in the union contract, and it is not possible to estimate how many staff hours are spent terminating and reinstating employee benefits when an employer submits late contributions.

■■ The sole issue is whether the provision "[l]iquidated' damages in the

amount of 10% will be assessed on all contributions and deductions not paid within fifteen (15) days" is a liquidated damages provision or a penalty provision. The standard for determining whether a liquidated damages provision will be enforced is section 339, subsection (1), of the Restatement of Contracts (1932). *(Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 359, 134 N.E.2d 329.) As stated by the court, that section provides:

> " 'An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast or just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.' "

In *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 470, 342 N.E.2d 105, the court upheld a liquidated damage provision which limited liability for loss or damage resulting from the performance, nonperformance or negligence in installing an alarm system to a " 'sum equal to ten percent of the annual service charge or $250, *whichever is the greater* * * *'* " (Emphasis added.) With reference to liquidated damage provisons, the court stated (35 Ill. App. 3d, 467, 471-72):

> "Generally, the courts of Illinois give effect to such damage provisions and do not treat them as penalties where the parties have expressed their agreement in clear and explicit terms. *(Burnett v. Nolen* (1949), 336 Ill. App. 376, 84 N.E.2d 155.) If, on the other hand, the clause is deemed inserted merely as a deterrent to prevent a party from breaching the contract and penalizing him for doing so, it will be regarded as an unenforceable penalty. *(Giesecke v. Cullerton* (1917), 280 Ill. 510, 117 N.E. 777.) Although where the intention of the parties to approximate anticipated damages is unclear, Illinois courts have indicated they will construe the sum as a penalty *(Arco Bag Co., Inc. v. Facings, Inc.* (1958), 18 Ill. App. 2d 110, 151 N.E.2d 438), the modern trend is to give effect to the provision in the absence of fraud or unconscionable oppression *(Heckman v. Mid States Development Co.* (1965), 60 Ill. App. 2d 113, 207 N.E.2d 715). However, there is much contradiction in the case law regarding the distinction between a valid liquidated damages clause and an unenforceable penalty, and each case must be decided according to its own particular facts. *Giesecke v. Cullerton.*"

In upholding the liquidated damage provision, the court pointed out that the parties involved were two corporate entities of equal economic

standing and that the disputed clause was contained in a contract which was in effect for more than two years prior to the alleged loss.

As in *Pick Fisheries, Inc.* plaintiffs here seek to enforce a liquidated damage provision which has been in existence for many years against a corporate entity that voluntarily signed letters of assent agreeing to be bound to the provisions contained in the union's collective bargaining agreement.

In *United Order of American Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.* (7th Cir. 1975), 519 F.2d 331, the court held that a liquidated damages provision of labor contract between union and employer, which provided for 10% of amount due as liquidated damages for employer's failure to make timely contributions to certain jointly administered fringe benefit funds, was enforceable and was not unenforceable as a penalty, even though provision failed to make damages proportional to length of delay in payment. The provision there at issue, which was broader than the provision here involved, provided (519 F.2d 331, 332):

> " 'Any Employer failing to make prompt and timely payment of the contribution to the Masonry Institute or to the Pension Fund or to the Apprenticeship Program in accordance with this Agreement, shall in addition to the aforesaid hourly contributions pay an additional amount of ten (10%) percent of the amount due in liquidated damages for failure to pay in accordance with this Agreement.
>
> If delinquency continues uncured for forty-eight (48) hours after written notice of such delinquency is mailed or delivered to the delinquent employer, the Employer shall be liable for claims for the extent of benefits to which the employee would have been entitled if the Employer had made the required contributions, and for all contributions and liquidated damages due thereunder, plus all reasonable legal fees incurred by the Masonry Institute, the Trustees of the Apprenticeship Program or the Pension Fund in enforcing the payment thereof.' "

There are many factual similarities between *Bricklayers* and the case before us. Duly authorized trustees in both cases seek to enforce a liquidated damages provision contained in a collective bargaining agreement to which an employer using union workers has agreed to be bound. In both, the amount of the liquidated damages for late payments is 10% of the amount due and the 10% is due without regard to the lateness of the payment. In both, the employers who challenged the liquidated damages provision had been participants of the collective bargaining agreement for many years. In both, the damages were greater than just the loss of the money's interest value and involved various administrative procedures

which were automatically undertaken with regard to an individual employee's benefits when contributions are not received on time. Records were not available in either case to determine the cost of the administrative procedures and the expenses involved could not be estimated as they related to an individual employer's failure to make timely payments. Lastly, in both, the liquidated damages collected would be solely for the benefit of the union employees.

In *Bricklayers*, the court found "[t]he most serious problem with the present damage provision is its failure to make the damages proportional to the length of the delay in payment." (519 F.2d 331, 334-35.) After reviewing the standard set out in section 339 of the Restatement of Contracts, the court stated that "the greater the difficulty of estimating the damages, the greater will have to be the latitude accorded to the determination of the reasonableness of the forecast [of just compensation for the harm caused by the breach]" and concluded that, given the facts and factors involved, the liquidated damages provision was appropriate. (519 F.2d 331, 335.) In reaching this conclusion, the court examined similar liquidated damage provisions contained in other labor agreements and upheld by other courts: *Weber v. Anspach* (1970), 256 Ore. 479, 473 P.2d 1011, and *United States v. Carter* (1957), 353 U.S. 210, 1 L. Ed. 2d 776, 77 S. Ct. 793.

In considering the ability to estimate the damages involved, the court dismissed the employer's assertion that the costs of the administrative procedures attendant to a delay in payment are easily calculated, stating (519 F.2d 331, 334):

"Indeed, the record keeping involved in arriving at a precise determination of administrative costs might in itself provide a substantial cost. In any event, we cannot be unmindful that what we are dealing with is not an after-the-fact cost determination but a contractually agreed-upon-in-advance-of-delinquency estimate of what is a reasonable likelihood of cost.

The very use of a liquidated damages provision, in addition to avoiding controversy (or at least that is the hope), presupposes some uncertainty of the amount of damages resulting from the triggering breach or delinquency. Uncertainty of the exact amount of resultant damages is a principal factor which causes contracting parties in advance of disputation to fix upon a basis of damages which is reasonably related to those which are likely to result."

In the case before us, the uncontradicted testimony of the manager of the Electrical Insurance Trustees shows the uncertainty of the amount of damages resulting from the late payments and ensuing procedures which had to be instituted to preserve the employees' rights. He testified that certain administrative procedures are routinely instituted when a payment

is past due and therefore, once late, certain harm is caused. There is no way to estimate in dollar terms the harm which results when an employer submits late contributions. Because of the inability to estimate with accuracy the harm caused by the receipt of late payment of contributions, an assessment of 10%, as agreed upon by the parties, is just compensation for the failure to make timely fringe benefit contributions on behalf of its employees. We agree with the court in *Bricklayers* that the "[u]ncertainty of the exact amount of resultant damages is a principal factor which causes contracting parties in advance of disputation to fix upon a basis of damages which is reasonably related to those which are likely to result."

■■ Further, the use of the word "penalized" in the first sentence of article XIX, section 1, does not convert the liquidated damage provision in the second sentence into a penalty. As quoted above, that section provides:

> "Employers who fail to have sufficient funds in the bank to meet all pay checks issued to Employees covered hereby and checks issued to cover contributions as outlined above, shall be penalized by the Electrical Joint Arbitration Board. Liquidated damages in the amount of 10% will be assessed on all contributions and deductions not paid within fifteen (15) days. Such assessments shall be disbursed proportionately into the various Trust Funds."

On its face, it is clear that the first sentence applied only to actions which may be taken by the Electrical Joint Arbitration Board (not the Trustees) against an employer whose checks "bounce." The action to be taken is not specified. Particularly is it not specified whether the "penalty" for such checks shall be monetary.

In *McCullough v. Moore* (1904), 111 Ill. App. 545, the court held that a provision was one for liquidated damages even though $5,000 was labeled "penal." The court, after quoting from *Hennessy v. Metzger* (1894), 152 Ill. 505, 517, 38 N.E. 1058, stated:

> " '* * *; but it is not the law that the presence or absence of the words "penalty," or "penal sum," or "liquidated damages," will control, in determining whether a sum named is to be considered as liquidated damages, or merely as a penalty' " (111 Ill. App. 545, 551)

and also quoted from 1 Sedgwick on Measure of Damages §408 (8th ed. 1891):

> "The question whether a stipulated sum is to be allowed as liquidated damages is a question of law, and no agreement of the parties to call it a penalty or liquidated damages can decide the question."

Courts construe and interpret contracts with the sole aim of determining the intention of the parties and will avoid placing upon language a

ridiculous construction. *Hall v. Wilson* (1934), 277 Ill. App. 601; *Parker v. Arthur Murray, Inc.* (1973), 10 Ill. App. 3d 1000, 295 N.E.2d 487.

The intent of the parties in agreeing to be bound by the collective bargaining agreement is clearly set forth in the preamble:

> "This Agreement is entered into to prevent strikes and lockouts and to facilitate peaceful adjustment of grievances and disputes between Employer and Employee in this trade, and to prevent waste and unnecessary and avoidable delays and expense, and for the further purpose of at all times securing for the Employer sufficient skilled Employees and so far as possible to provide for labor continuous employment; such employment to be in accordance with the conditions herein set forth and at wages herein agreed upon, that stable conditions may prevail in building construction, that building costs may be as low as possible consistent with fair wages and conditions of employment and to further establish the necessary procedure by which these ends may be accomplished."

The making of timely employee fringe benefit contributions by the employer is necessarily a matter consistent with the expressed intention of the parties to prevent unnecessary waste and expense and to provide employees with employment in accordance with conditions and wages agreed upon.

We find that the provision in question is one for liquidated damages and not for a penalty. The judgment of the circuit court of Cook County for defendant is reversed and the cause remanded to that court with directions to enter judgment in the amount of $2944.24 for plaintiffs, Norman Pierce, A. E. Soudan, Timothy J. Bresnahan, Joseph Duffy, Edward E. Hansen, W. Hultgren, Jr., Harold J. Kilburg, Joseph Kingsley, Garrett P. Walters and Burton Van Wetering, as the Electrical Insurance Trustees, and against defendant, B & C Electric, Inc., a corporation.

Reversed and remanded with directions.

GOLDBERG and McGLOON, JJ., concur.