**Bernie I. GARCIA, Plaintiff,**

v.

**David C. CANAN, Defendant.**

**No. 94 C 697.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 6, 1994.

---

Penny Brown of Much, Shelist, Freed, Denenberg & Ament, P.C., Chicago, IL, for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Bernie Garcia ("Garcia") sues David Canan ("Canan") for nonpayment of an Instalment Note ("Note") in the principal amount of $245,000. Although Canan's default does entitle Garcia to the entry of judgment, this Court retains the independent responsibility to make sure that the amount sought is proper—that no part of it represents an unenforceable penalty. For the reasons stated in this memorandum opinion and order, the judgment in Garcia's favor cannot include what the Note labels as a "late charge."

Canan signed the $245,000 Note on December 28, 1990, contemporaneously securing payment of the Note by executing a Trust Deed ("Mortgage") on Chicago real estate. Under the terms of the Note, after 2½ months Canan was to commence monthly payments of nearly $2,500 each (applicable first to interest at the annual rate of 11.5%, and then to principal), with a large balloon payment of the remaining principal amount (scheduled to exceed $200,000) to fall due on January 30, 1996.

Any unpaid principal payment was to bear post-maturity interest at a 15% annual rate rather than the pre-maturity 11.5% rate. In addition the Note provided:

> There shall be a late charge equal to 10% of any payment of principal or interest that is received by the Holder fifteen or more days after such payment is due, such late charge to be payable to the Holder upon demand.

Because Canan has made no payments at all on the Note, Garcia has exercised the right granted by the Note to accelerate the entire principal amount. At this point Garcia sues for payment of the entire principal plus interest and attorneys' fees (including such fees incurred in the state court foreclosure of the Mortgage)—and he also seeks to collect the amount focused on in this opinion, "10% for late charges on the 37 late payments due as of March 15, 1994 in the total amount of $9,214.33."

Courts and litigants have frequently had to wrestle with the distinction between unenforceable penalties and enforceable provisions fixing damages in advance for future defaults. *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir.1985) provides a thoughtful exposition of Illinois law in that respect, identifying the considerations that enter into the resolution of an issue that is not susceptible to bright-line treatment. And this Court has dealt with the penalty-v.-liquidated-damages issue a number of times in the past, including a situation involving a defaulting defendant (*Heller Financial, Inc. v. Burry*, 633 F.Supp. 706, 707 (N.D.Ill. 1986)).

No difficulty in that respect is presented by the Note's provision for the substantial stepup in interest rates after a default in payment. *Baker v. Loves Park Sav. & Loan Ass'n*, 61 Ill.2d 119, 127–28, 333 N.E.2d 1, 5–6 (1975) upheld just such a mortgage provision, relying on two Illinois Supreme Court cases that were then fully a century old. More recently *Chemical Bank v. American Nat'l Bank & Trust Co.*, 180 Ill.App.3d 219, 228–31, 129 Ill.Dec. 175, 180–82, 535 N.E.2d 940, 945–47 (1st Dist.1989) has rejected the argument that a large post-default stepup in a mortgage's interest rate would take the *Baker* decision out of play.

But a late charge based on a straight 10% of the unpaid instalment or instalments—a charge that is invariant in terms of the duration of the breach, once the triggering event has taken place [1]—poses a dramatically different situation. That kind of fixed late charge should be contrasted with the unex-

---

1. As the Note specifies, an added 10% of the delinquent instalment payment is levied on the borrower whether the payment is delinquent by 15 days or (say) 150 days. Indeed, the Note literally gives Garcia as its holder the right to have accelerated the entire $245,000 principal (without notice to Canan, incidentally), then to wait 15 days and thus to saddle Canan with a $24,500 late charge (10% of the $245,000).

ceptionable type of provision that was dealt with, for example, in *Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270, 275 (7th Cir.1983) (where a license agreement provided that "Sealy shall have the right to assess a charge of one per cent (1%) per month for late payment of royalties . . . ."). Charges of the latter type are analytically indistinguishable from interest—that is, they impose on the defaulting party an obligation to pay for the loss of the use of money over time.

There is one frequently encountered situation that does involve a flat 10% late charge calculated in the same manner as the one at issue here. This Court is of course familiar with the provisions that are universally built into employee benefit fund agreements, which also add a 10% premium to any delinquent amounts. Those provisions regularly come before this Court and its colleagues in ERISA enforcement cases seeking payment of delinquent employer contributions. Our Court of Appeals has upheld the enforceability of such provisions, in the face of an attack that sought to characterize them as unenforceable penalties, in *United Order of American Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331 (7th Cir.1975). And although *United Order* decided that question as a matter of federal law, both the decision and its analysis were echoed as a matter of Illinois law in *Pierce v. B & C Elec., Inc.*, 104 Ill.App.3d 309, 60 Ill.Dec. 65, 432 N.E.2d 964 (1st Dist. 1982).

Those decisions, however, plainly do not control here. Indeed, they really point in the opposite direction. Both our Court of Appeals and the Illinois Appellate Court stressed the special context of fringe benefit contributions, in which such added amounts essentially constitute part of the agreed-upon consideration to be paid by employers for the services performed by their employees—and both courts particularly emphasized (1) the special considerations that are relevant in the employment relationship and (2) the complex consequences of nonpayment on the employee benefit plans. All of those factors were found by both courts to justify treating the added payments as a reasonable before-the-fact effort to quantify the uncertain costs that could be caused by future defaults (the classic analytical predicate for finding "liquidated damages" rather than a "penalty"). In fact our Court of Appeals directly contrasted the employee benefit plan situation before it with the situation that is now before this Court, as to which it indicated that only a cost-of-money provision dependent on the length of the delay—and *not* a flat 10% levy—would escape the "penalty" label (*United Order*, 519 F.2d at 335):

> If the case involves nothing more than the withholding of a single fixed sum due, then the price at which a like sum could be secured in the money market would seem to provide the answer.

Accordingly this Court does not award the "late charge" component of the prayed-for relief as part of Garcia's default judgment. Garcia's counsel shall promptly present a proposed judgment order that includes all of the amounts that are properly recoverable, but excluding the late charge.[2]

---

**2.** *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) treats the award of attorneys' fees as a separable component that does not affect the finality of a judgment order awarding damages (even though the fees may be provided for in the same contractual document on which the damages are based). Accordingly Garcia's counsel need not necessarily include that component in the judgment order (although she may of course do so). But if the fee amount is not included, counsel should be aware of the December 1, 1993 amendment to Fed.R.Civ.P. ("Rule") 54, which substantially contracts the time frame within which counsel must act in that respect (Rule 54(d)(2)(B)).